675 A.2d 306

In re ESTATE OF Helen U. GENIVIVA, Deceased.

APPEAL OF Nick A. FRISK, Jr.

In re ESTATE OF Helen U. GENIVIVA, Deceased.

Appeal of Cosmo S. GENIVIVA, Jr., Executor
of the Estate of Helen U. Geniviva.

Superior Court of Pennsylvania.

Argued Feb. 6, 1996.

Filed April 15, 1996.

---

56

58

Frank G. Verterano, New Castle, for Frisk.

Robert C. Tourek, Pittsburgh, for Estate of Geniviva.

Mark F. Geary, Washington, for Brian and Marilyn Geniviva, participating parties.

Before TAMILIA, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

In these consolidated appeals, we are asked to determine whether a former attorney for the executor of an estate may appeal from a decree which sanctioned the executor of that estate for mismanagement. We also consider whether an executor may be excused from liability for any surcharges that resulted from his alleged reliance upon advice of counsel. Because we find that the attorney could not properly appeal from the present decree, we dismiss his appeal. Further, we conclude that the Orphans' Court did not err when it sanctioned the executor for mismanagement of the decedent's estate. Accordingly, we affirm.

Helen U. Geniviva (decedent) died testate on April 24, 1981, with an estate valued in excess of $600,000. Soon thereafter, her son, Cosmo S. Geniviva (the executor) was granted letters testamentary naming him executor of her estate. The executor retained Nick A. Frisk, Jr. as counsel for the estate and, before any substantial work had been done on the administration of the estate, paid him a fee of $40,000. In addition, the executor immediately paid himself a like sum of $40,000 as executor's compensation. Neither the executor nor Frisk timely filed an accounting, an inventory of the estate, or the required Pennsylvania and federal estate tax returns. In 1989, decedent's other children, Brian and Marilyn Geniviva (the beneficiaries), petitioned the Lawrence County Orphans' Court to issue a citation ordering the executor to file an amended inventory and a full accounting of the estate. In their petition, the beneficiaries alleged that Frisk and the executor were fraudulently delaying the final disposition of the decedent's estate. Following a hearing, the court issued the citation and ordered the executor to comply within 60 days. However, the executor did not comply; rather, through new counsel, he petitioned the court to permit him to withdraw as

executor of the estate. The court denied his petition, noting that the executor could not withdraw until he complied with the citation.

Thereafter, the executor filed a document that he styled as the final accounting of the estate, and the beneficiaries filed exceptions to that accounting. On April 19, 1994, the court filed a Memorandum Opinion and Decree Nisi, ordering the executor to reimburse the estate for all sums that the estate was required to pay in back taxes, interest, and penalties due to his mismanagement of the estate. The court also ordered the executor to reimburse the estate for the majority of his executor's fee as well as most of the counsel fees that he paid to Frisk. The executor and the beneficiaries filed exceptions to the decree nisi. Although Frisk no longer represented the estate or its executor, and did not file his own exceptions, he filed a brief in support of the executor's exceptions. At a hearing on the beneficiaries' exceptions, the court heard oral argument from the beneficiaries, the executor, and Frisk. On June 26, 1995, the court entered a final decree that denied the executor's exceptions, awarded the beneficiaries counsel fees, awarded the estate interest on the surcharge applied to the executor, and finalized in all other respects the decree nisi. The court noted, however, that it was unable to determine the exact amount of counsel fees to award because the relevant evidence was not included in the transcribed notes of testimony. Frisk then appealed to this Court. After the missing notes of testimony were transcribed and filed with the court, the Orphans' Court amended the final decree and directed the executor to pay the beneficiaries $20,675.66 in counsel fees. Subsequently, the executor appealed the amended final decree to this Court.

### Frisk's Appeal Docketed at No. 1329 Pittsburgh, 1995

On appeal, Frisk, in essence, contends that the Orphans' Court erred in calculating the damages sustained due to his failure to timely liquidate the estate's stocks. Frisk also claims that the Orphans' Court did not have jurisdiction to amend its final decree after an appeal had been lodged from that decree to this Court.

■ We are precluded from reaching the merits of Frisk's claims, however, because he does not have standing to bring this appeal. Rule 501 of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, that "any party who is aggrieved by an appealable order . . . may appeal therefrom." A party is defined by the Judicial Code as "[a] person who commences or against whom relief is sought in a matter." 42 Pa.C.S. § 102. In an action relating to the administration of an estate, the only party is the estate.

Here, Frisk does not represent the estate. The mere fact that Frisk filed a brief in support of the executor's exceptions and appeared at oral argument on those exceptions does not make him a party to this action. *See Silver Spring Twp. v. Pennsy Supply, Inc.,* 149 Pa.Cmwlth. 314, 319–20, 613 A.2d 108, 111 (1992) ("[O]ne, who is not a named party to an action . . . cannot become a party to an action by the simple expedience of walking into the office of the prothonotary and filing his appearance in any one or more of the multitude of open actions on file.") Thus, we conclude that Frisk is not a party to this appeal.

■ Even if Frisk were a party to the instant case, he would not be an *aggrieved* party. "The requirements of 'aggrievement' are that a party have a direct interest in an immediate consequence of the judgment from which an appeal is taken." *Tripps Park Civic Ass'n. v. Pennsylvania Pub. Utility Commission,* 52 Pa.Cmwlth. 317, 322, 415 A.2d 967, 970 (1980). *See also Venango Newspapers v. Unemployment Compensation Bd.* 158 Pa.Cmwlth. 379, 383, 631 A.2d 1384, 1386 (1993) ("If the order causes direct harm, the party is aggrieved and has a right to appeal."); *Green by Green v. SEPTA,* 380 Pa.Super. 268, 271, 551 A.2d 578, 579 (1988) ("To be 'aggrieved' a party must have been adversely affected by the decision from which the appeal is to be taken.") The Orphans' Court decree does not direct Frisk to take any action whatsoever with respect to the decedent's estate. Only the executor is surcharged by the court order and final decree.

Thus, Frisk is not an aggrieved party. Accordingly, we will not entertain the issues raised in his brief.

The appeal at No. 1329 Pittsburgh, 1995 is **DISMISSED.**

**The Executor's Appeal Docketed at No. 1532 Pittsburgh 1995**

On appeal, the executor raises five issues for our review:

I. DUE TO [FRISK'S] NEGLIGENCE AND DISHONESTY, SHOULD THE [EXECUTOR BE] EXCULPATED FROM LIABILITY FOR THE FRAUD PENALTY PLUS INTEREST FROM AUGUST 1, 1987, AND FOR ALL THE INTEREST ASSESSED AND ACCRUING ON THE ESTATE TAX CURRENTLY OWED BY THE ESTATE SINCE JANUARY 24, 1982?

II. DUE TO [FRISK'S] NEGLIGENCE, SHOULD THE [EXECUTOR] BE EXCULPATED FROM LIABILITY FOR THE $87,958.16 IN STOCK LOSSES INCURRED BY THE ESTATE?

III. WAS THE [EXECUTOR] ENTITLED TO THE COMPENSATION PAID HIM FOR SERVING AS EXECUTOR FOR THE ESTATE?

IV. SHOULD THE [EXECUTOR'S] NEW ATTORNEY HAVE BEEN AWARDED COUNSEL FEES FOR PAST AND FUTURE SERVICES RENDERED ON BEHALF OF THE [EXECUTOR] AND THE ESTATE?

V. SHOULD THE [EXECUTOR] HAVE BEEN SURCHARGED FOR BRIAN GENIVIVA'S READY ASSET ACCOUNT?

Brief for Appellant at 2.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. *In re Estate of Braun,* 437 Pa.Super. 372, 376, 650 A.2d 73, 75 (1994). Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. *Id.* Moreover,

although our review of the court's factual findings is limited to considering whether those findings have support in the record, we are not constrained to give the same deference to any resulting legal conclusions. *Id.* at 377, 650 A.2d at 76.

As his first issue, the executor contends that he should not be liable for any surcharges or penalties in connection with his failure to file estate taxes because these charges resulted from attorney Frisk's negligent advice concerning the need for estate tax returns. We disagree.

An executor, as a fiduciary of the estate, "is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate." *In re Estate of Lohm,* 440 Pa. 268, 273, 269 A.2d 451, 454 (1970). Further, the executor has the duty to pay the federal estate tax, and neglect of this duty will result in the executor's personal liability. *In re Estate of Maurice,* 433 Pa. 103, 249 A.2d 334 (1969). In addition, a surcharge may be imposed on the executor to compensate the estate for any losses incurred by the executor's lack of due care. *In re Dobson's Estate,* 490 Pa. 476, 417 A.2d 138 (1980). When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing. *Lohm, supra.* However, where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge. *Id.* Although the court will consider that the executor acted upon the advice of counsel in determining whether he acted in good faith, this does not provide the executor with complete immunity to a surcharge. *Id.* at 275, 269 A.2d at 455. The analysis regarding the executor's reliance on the advice of counsel is twofold: first, was the initial choice of counsel reasonably prudent under the circumstances, and, second, was the subsequent decision to continue to rely upon this counsel's advice a reasonably wise and prudent choice. *Id.*

█ In his brief to this Court, the executor places all of the blame for failure to pay the estate taxes on Frisk, asserting that Frisk assured him that the estate did not owe any federal estate taxes. Further, the executor claims that Frisk asked him to sign a false affidavit which stated that the executor had personally filed the tax returns. Finally, the executor maintains that Frisk simply did not understand many of the issues involved in settling an estate of this magnitude.

In spite of these claims, however, the executor does not dispute that federal estate tax returns and Pennsylvania inheritance tax returns were not filed until 1985, almost four years after the decedent's death. The Orphans' Court found that the executor, "who testified that he hired an accountant to prepare his own income tax returns, was clearly aware of the duty of all citizens to pay taxes...." Memorandum Opinion and Decree, April 19, 1994, at 7. Both Pennsylvania and federal estate taxes become due at the date of death, and the executor is given nine months to file the estate tax return. 72 P.S. § 9145(c); 26 U.S.C. § 6075(a). Thus, we find that the Orphans' Court could have reasonably concluded that the executor knew that the estate would have to file tax returns.

In addition, because a significant penalty has been imposed upon the estate for its failure to comply with federal and state estate tax laws, the burden shifts to the executor to explain how his reliance on Frisk's alleged expertise in these matters establishes that he acted with the skill and caution of the reasonably prudent man. *Lohm, supra.* The executor cites to no Pennsylvania case law to support his proposition that he acted reasonably. Even assuming that the initial retention of Frisk as counsel for the estate was prudent, we cannot conceive how it was a reasonable or wise choice to continue to employ Frisk to advise him on the administration of the estate. Frisk not only failed to properly advise the executor regarding the filing of the proper tax returns, he also failed to advise him of the necessity for timely preparation of an inventory of the estate. This document was not filed until three and one-half years after it was due. Moreover, Frisk failed to insure that a final accounting was prepared for the

estate. In fact, this final accounting was not filed until after the present suit was commenced, in 1989. Frisk was paid $40,000 by the estate. The executor was also paid $40,000. "It is only reasonable and logical to expect that services so well compensated for should have been performed in a careful and skillful manner." *Maurice, supra,* at 108, 249 A.2d at 336. Thus, we conclude that the executor's reliance on counsel does not provide him with immunity to the surcharge in this instance.

We conclude that the executor has utterly failed to competently perform his duties concerning this estate, and he has failed to present exculpatory evidence that will avoid a surcharge regarding the penalties and interest due to the failure of the estate to pay its taxes. The ultimate responsibility for the payment of estate taxes falls upon the executor. *Id.* Because we find that the executor has failed to use the common skill and caution that a prudent man in similar circumstances would have used in the management of his own estate, *Lohm, supra,* we conclude that the Orphans' Court did not abuse its discretion when it surcharged the executor for these charges.

Next, the executor contends that he should not be held responsible for the losses incurred by the estate when the sale of certain stocks resulted in a loss in value due to the delay in liquidation.

The Probate, Estates, and Fiduciaries Code provides: "Subject to his duty to liquidate the estate for prompt distribution and to the provisions of the will, if any, the personal representative may invest the funds of the estate but shall have no duty to do so." 20 Pa.C.S. § 3316. Normally, this duty to liquidate the estate should be executed within six months following the first advertisement of the grant of letters; however, this time period is not absolute and the executor must exercise common prudence, caution and skill in liquidation. 2 Charles W. Frampton, *Remick's Pennsylvania Orphans' Court Practice,* 200 (1992).

It is undisputed that the decedent, at the time of her death, owned various securities with a value of $187,803.66. The executor and the beneficiaries held a conference in the summer of 1981, during which they decided that the stocks should be sold as soon as possible. Memorandum Opinion and Order, June 26, 1995, finding of fact no. 32, at 6. However, although the executor delivered the stock certificates to a broker in September 1981, he failed to authorize the sale of those certificates until April 1982. *Id.* At that time, the stock was sold for $100,345.50, resulting in a loss of $87,458.16 to the estate. The Orphans' Court surcharged the executor for this entire amount.

The executor asserts that he acted in accordance with the dictates of the prudent man rule as set forth in 20 Pa.C.S. § 7302(b). This rule permits a fiduciary to retain an interest in an investment without suffering from personal liability so long as he exercises the level of care "which men of prudence, discretion and intelligence exercise in the management of their own affairs. . . ." However, this portion of the Probate, Estates, and Fiduciary Code does not apply to an individual acting as a personal representative. 20 Pa.C.S. § 7301. Again, the executor has failed to explain how his actions were reasonable under these circumstances. He did not authorize sale of the stock for one full year following decedent's death. If the estate had been liquidated for prompt distribution as required by 20 Pa.C.S. § 3316, the stock should have been sold no later that six months following decedent's death, or October 1981. Although the executor blames Frisk for failing to avoid the loss, we have already found that it was not prudent for the executor to continue to rely upon Frisk's advice. Accordingly, we conclude that the Orphans' Court did not abuse its discretion when it imposed the surcharge on the executor for the losses to the estate which resulted from his failure to timely liquidate the securities. *See, e.g., In re Jones Estate,* 400 Pa. 545, 162 A.2d 408 (1960) (surcharge on executor was proper where the executor converted all of decedent's assets into cash and did not

distribute or invest this money for over four and one-half years, thus causing a substantial loss in value to the estate).

In the alternative, the executor asserts that only one-half of the losses should be surcharged because he would have been deemed to have acted prudently if he had sold the stock within six months of decedent's death. However, the executor does not present any evidence to support his implied claim that the losses to the estate occurred in a "straight line." Moreover, the record does not demonstrate that the losses occurred steadily throughout the year. The Orphans' Court made a credibility determination that the proper amount of the surcharge was for the entire amount of the loss. On review, with the state of the record in this case, we will not disturb this determination. Accordingly, we will not reduce the amount of this surcharge.

As his third issue, the executor contends that he is entitled to the entire fee that he received for serving as executor of the estate. It cannot be disputed that the executor of an estate is entitled to "such compensation . . . as shall be reasonable and just. . . ." 20 Pa.C.S. § 3537. The basis for determining whether compensation is reasonable depends upon the value of the services actually rendered. *In re Estate of Rees,* 425 Pa.Super. 490, 625 A.2d 1203 (1993). Further, "executors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id.* at 497, 625 A.2d at 1206. In addition, the determination of whether the executor's fees are reasonable is left to the sound discretion of the Orphans' Court, and we will not disturb its determination absent a clear error or an abuse of discretion. *Id.* Finally, the Orphans' Court "also has the authority to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary and their counsel." *Id.*

In the present case, the executor claimed a $40,000 fee soon after the grant of letters testamentary. We have already determined that the executor failed to exercise common skill, prudence and caution in executing his duties con-

cerning the management of his mother's estate. In addition, the executor retained an attorney for a number of years who, by his failure to properly supervise the administration of the estate, contributed to significant losses to the estate. In his brief to this Court, the executor maintains that he is entitled to the entire fee because he "kept track of all of the assets of the estate, wrote over 150 checks to pay expenses and debts of the estate and kept track of all of the income of the estate." Brief for Appellant at 13. However, the Orphans' Court found, and we agree, that $40,000 is "unconscionable, outrageous and illegal in the face of this record which shows dereliction of duty, dilatory performance and the cause of serious financial loss to the estate and the beneficiaries." Opinion, *supra*, at 8. Thus, we conclude that the Orphans' Court did not err or abuse its discretion in reducing the executor's fee to $5,000. *Accord Lohm, supra* (award of no attorney fees was proper when co-executors were guilty of gross negligence in causing severe tax penalties and interest to an estate).

Next, the executor asserts that he should be awarded counsel fees to pay the attorney hired to represent the estate after he fired Frisk. The award of counsel fees is within the sound discretion of the Orphans' Court. *In re Estate of Albright,* 376 Pa.Super. 201, 545 A.2d 896 (1988), *appeal denied,* 522 Pa. 571, 559 A.2d 33 (1989). The Orphans' Court judgment will not be disturbed except in cases of "palpable error." *Estate of Wanamaker,* 314 Pa.Super. 177, 180, 460 A.2d 824, 825 (1983). In the present case, the Orphans' Court order is silent on the issue of who is responsible for the fees of the second attorney. However, the services of the second attorney would not be necessary if the executor had properly administered the estate from the start. Because these additional fees are a direct result of the executor's negligence in the administration of the estate, we find that it would be inequitable for the estate to assume these legal fees. Accordingly, we conclude that the Orphans' Court's failure to award the executor counsel fees was not palpable error.

■ Finally, the executor contends that he should not have been surcharged by the court for the $10,235 that had been in Brian Geniviva's ready asset account at decedent's death. This was an account jointly owned by the decedent and Brian Geniviva, with rights of survivorship. At the decedent's death, the executor instructed Brian to withdraw the money in this account and give it to him for deposit in the estate checking account. The Orphans' Court held that this was improper because this money was not a part of the estate. Thus, the court directed the executor to repay Brian Geniviva the sum of $10,235, less the applicable death taxes. The executor now contends that these were estate funds and that he properly paid estate debts with this money. Thus, he contends that he should not have to repay Brian Geniviva. We disagree.

Section 6304 of the Probate, Estates and Fiduciaries Code states, in pertinent part, that "[a]ny sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent. . . ." 20 Pa.C.S. § 6304(a). Thus, when the decedent died, the funds in the ready asset account belonged to Brian Geniviva, not to the estate. Accordingly, the Orphans' Court did not err when it required the executor to repay Brian Geniviva these funds.

Based upon the foregoing, we affirm the order that denied the executor's post-verdict motions and finalized the decree nisi that imposed a surcharge upon the executor.

Appeal at No. 1329 Pittsburgh, 1995 is **DISMISSED.**

Order at No. 1532 Pittsburgh, 1995 is **AFFIRMED.**