In re ESTATE OF Sigmund S. HARRISON, Deceased.

Appeal of Joel Every, Executor of the Estate of Sigmund S. Harrison, Deceased, Appellant.

In re Estate of Sigmund S. Harrison, Deceased.

Appeal of Harriet Richardson and Lydia Harrison, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 27, 1999.

Filed Jan. 24, 2000.

Thomas A. Boulden, Norristown, for Joel Every.

Lawrence J. Schempp, Philadelphia, for Harriet Richardson.

Before JOHNSON and STEVENS, JJ., and CIRILLO, President Judge Emeritus.

JOHNSON, J.:

¶ 1 This matter comes before us on cross-appeals from a final decree of the orphans' court of Montgomery County. Joel Every, Executor of the Estate of Sigmund S. Harrison, Deceased, (the Executor) appeals a portion of the decree that subjected him to a surcharge equal to a fee he accepted from counsel for the Estate in exchange for referral of litigation in which the Estate became involved. Beneficiaries Harriet Richardson and Lydia Harrison appeal a portion of the decree that sustained payment of the Executor's commission and affirmed sums paid to the Executor's wife for services she rendered as a rental agent for Estate properties. They assert as well that the Executor's commission was excessive. We conclude that the record supports the orphans' court's rulings and, in the Executor's appeal, establishes the propriety of the sanction. Consequently, we affirm the court's

order entering the adjudication and decree nisi as the final decree.

¶ 2 This matter came before the orphans' court on objections to the Executor's final accounting. Estate beneficiaries Harriet Richardson and Lydia Harrison (the Beneficiaries) filed four objections, asserting initially that the Executor violated his fiduciary duty by accepting an undisclosed referral fee from two outside counsel for the Estate. The record reflects that the fees were equal to 15% and one-third, respectively, of the sums the two counsel billed to the Estate.

¶ 3 The Beneficiaries asserted also that the Executor violated his fiduciary duty by honoring the decedent's *inter vivos* contract with Fran Every to act as rental agent for the decedent's realty. Fran Every is the Executor's wife.

¶ 4 Finally, the Beneficiaries asserted that the Executor's commission was excessive and that the Executor distributed the commission prematurely, rendering the Estate unable to pay expenses necessary for conservation.

¶ 5 Following a hearing, the orphans' court, the Honorable Stanley R. Ott, sustained the Beneficiaries' objection to the referral fee but dismissed all remaining objections. On January 14, 1999, the Court entered a decree nisi surcharging the Executor an amount of $76,320, corresponding to referral fees the Executor accepted but did not disclose to the Beneficiaries. Both parties filed objections to the January 14 th decree. The orphans' court heard argument *en banc* and confirmed Judge Ott's adjudication and decree nisi as the final decree, but modified the amount of the surcharge. Opinion and Order Sur Exceptions to Adjudication, 4/13/99, at 20. The court allowed the Executor a credit of $10,000 for legal work that he completed beyond the scope of work customarily required of executors. Both parties appeal from that order. We note, however, that the Beneficiaries do not contest the court's $10,000 reduction of the surcharge provided by the decree nisi.

¶ 6 For purposes of clarity, we will address the parties' appeal and cross-appeal separately below.

## I. APPEAL OF EVERY

¶ 7 The Executor raises the following issues for our review:

1. Did [the Executor] engage in self-dealing as defined by Pennsylvania law by accepting undisclosed referral fees from counsel for the decedent's estate?

2. Even if [the Executor] engaged in self-dealing, was it the type that warrants sanctioning by the courts?

3. Assuming that [the Executor] engaged in prohibited self-dealing, should the "remedy" have been a prospective enunciation of the new law proscribing such conduct, *not* a punitive surcharge, especially when [the Executor] should not have known of any prohibition on that conduct?

Brief for Appellant, Joel Every, Esquire, Executor of the Estate of Sigmund S. Harrison, Deceased (hereinafter Brief for Appellant) at 4.

¶ 8 Our standard of review of the findings of an orphans' court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996) (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's]

decree." *Horner v. Horner,* 719 A.2d 1101, 1103 (Pa.Super.1998) (discussing standard of review for courts of equity).

¶ 9 To facilitate appellate review, we will address the Executor's assertions together. The Executor argues first that his acceptance of an undisclosed referral fee from counsel for the Estate does not constitute self-dealing. He argues, as a corollary, that even if the elements of self-dealing are established, the facts of this case do not justify the sanction imposed by the orphans' court because fees charged by counsel were not affected by the referral fee arrangement. Finally, he contends that, notwithstanding our disposition of the prior two issues, the appropriate "remedy" is a prospective enunciation of the law, proscribing acceptance by attorney executors of referral fees from outside counsel. The Executor contends that the law predating this appeal provided no clear prohibition of such activity. We find no merit in any of these contentions.

¶ 10 More than one-half century ago, our Supreme Court defined the role and duty of an executor as a fiduciary. "An executor is a fiduciary no less than is a trustee and, as such, primarily owes a duty of loyalty to a beneficiary of his trust." *In re Noonan's Estate,* 361 Pa. 26, 30, 63 A.2d 80, 82 (1949). "Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness." *Id.* at 29, 63 A.2d at 82. The Supreme Court has elaborated accordingly that:

> He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because from the frailty of nature, one who has the power[ ] will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.

*Id.* at 31, 63 A.2d at 83 (citation omitted) (quoting *Beeson v. Beeson,* 9 Pa. 279, 284 (1848)). Thus, the rule forbidding self-dealing serves both to shield the estate and its beneficiaries and ensures the propriety of the executor's conduct. *Id.* at 32–33, 63 A.2d at 84. Consequently, "the rule is inflexible, without regard to the consideration paid, or the honesty of intent." *Id.*

¶ 11 Moreover, a finding of prohibited self-dealing need not be premised on a showing of loss to the estate:

> The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it might have affected his judgment in a material connection ... *[T]he fiduciary's disqualifying interest need not be such as 'did affect his judgment' but merely such as 'might affect his judgment.'*

*Id.* at 31, 63 A.2d at 84 (emphasis added) (quoting *In re Downing's Estate,* 162 Pa.Super. 354, 57 A.2d 710, 712 (1948)). *See also Eagan v. Jackson,* 855 F.Supp. 765, 779 (1994) ("It is unnecessary to show that the fiduciary succumbed to this temptation, that he acted in bad faith, that he gained an advantage, fair or unfair, [or] that the beneficiary was harmed.... [T]he fiduciary is punished for allowing himself to be placed in a position of conflicting interests in order to discourage such conduct in the future."). If the record substantiates a finding of self-dealing, the executor may be properly surcharged for any amount he accepted in violation of his fiduciary duty. *Id.* at 791–92.

¶ 12 In *Eagan,* the United States District Court granted forfeiture of a $75,000 referral fee paid to the guardian of an incompetent's estate by counsel who represented the estate in personal injury litigation. Under those parties' referral fee agreement, counsel would pay the guardian a percentage of fees he collected from the estate as continuing compensation for the referral. The district court recognized readily the potential conflict posed by such an agreement.

As the guardian of [the decedent's estate], [the guardian's] interest was in maximizing the funds recoverable by the estate as a result of this litigation, net of all costs including attorneys' fees. As a lawyer receiving a referral fee from [outside counsel], [the guardian's] position was compromised, since his interest was in maximizing [counsel's] overall fee, of which he would receive one-third. Clearly, [the guardian's] duty to superintend the litigation, including his willingness to terminate [counsel's] representation if it proved to be inadequate, was compromised by this arrangement.

*Id.* at 780.

¶ 13 In this case, the orphans' court concluded, as did the court in *Eagan,* that the Executor's fee arrangement with counsel for the decedent's estate posed an unavoidable conflict of interest and, thus, constituted prohibited self-dealing. Upon study of the record before us, we find no error in the orphans' court's determination. The record establishes, without contradiction, that the fees the Executor accepted were calculated as a percentage of amounts billed to the Estate, such that the greater the amounts charged, the greater the potential referral fee. As in *Eagan,* the potential conflict of interest posed by this arrangement is obvious. Though we recognize that the district court in *Eagan* interpreted and applied the law of New Jersey, we find no distinction between the policy served by the law governing fiduciary duty in our respective states. The "frailty of nature" recognized by our Supreme Court first in *Beeson,* (1848), and reaffirmed one hundred years later in *Noonan's Estate,* is equally at issue in *Eagan,* and serves, fundamentally, as the basis for the dispositions in all three cases. Consequently, we conclude, as did the orphans' court, that the Executor in this case engaged in prohibited self-dealing.

¶ 14 Additionally, we find no merit in the Executor's contention that because the referral fee did not affect the fee rate that counsel charged the Estate, this case does not "warrant[ ] sanctioning by the courts." Brief for Appellant at 11. Notwithstanding the credibility of the Executor's contention as a matter of fact, our law establishes beyond question that the test for self-dealing by a fiduciary is inflexible. *See Noonan's Estate,* 361 Pa. at 31, 63 A.2d at 83. Once self-dealing is established, a surcharge may be applied to a fiduciary, not as compensation for any loss to the estate, but as punishment for the fiduciary's improper conduct. *See Eagan,* 855 F.Supp. at 791–92.

¶ 15 Nor do we find merit in the Executor's contention that a prospective remedy is necessary in this case because "appellant should not have known of any prohibition on [his] conduct." Brief for Appellant at 15. Notwithstanding the previous absence of cases applying Pennsylvania law to proscribe acceptance of referral fees by attorney executors, we need only consider the time-honored mandates prescribed by our law for the conduct of fiduciaries to recognize the impropriety of the arrangement pursuant to which the executor acted in this case. *See Noonan's Estate,* 361 Pa. at 30, 63 A.2d at 82; *Beeson,* 9 Pa. at 284. Accordingly, for all of the foregoing reasons, we find no error in the decree of the orphans' court surcharging the Executor for amounts corresponding to referral fees he accepted from outside counsel.

## II. APPEAL OF RICHARDSON AND HARRISON

¶ 16 The Beneficiaries cross-appeal from the orphans' court's decree and state the following questions for our review:

I. Did the [E]xecutor breach his fiduciary duty to the Estate by paying his wife $47,642.17 in rental commissions (12.88 percent received over a period of ten years); was it not the [E]xecutor's burden to prove said rental commissions were reasonable rather than the [B]eneficiaries burden to prove the commission was unreasonable;

and was it not error to conclude that the commission was justified by the fact that the decedent allegedly orally agreed to such a commission?

II. Did the [E]xecutor breach his fiduciary duty by taking fees for himself and his wife *before* the bulk of the Estate's real estate was sold, as a result of which (i) the Estate was financially unable to cure environmental problems relating to the properties, (ii) there was consequent delay of six years in selling the properties, and (iii) when the properties were sold they produced hundreds of thousands of dollars less than they otherwise would have produced; and did not the [B]eneficiaries produce sufficient proof of the foregoing to shift the burden of proof to the [E]xecutor?

III. Was the [E]xecutor's $130,000 commission representing a blanket 5% of the appraised value of the Estate at the time of death, excessive and insupportable because the [E]xecutor kept no contemporaneous time records, and was the timing of commission payments, $101,000 of which had already been paid in 1990, improper in light of the [E]xecutor's failure to seek permission from the court to take any fees from the Estate in violation of Orphan's [sic] Court Rule 6.11(b) and the decedent's will?

Brief of Appellees/Cross–Appellants Harriet Richardson and Lydia Harrison (hereinafter Brief for Appellees) at 3–4.

■ ¶ 17 Initially, we note that the Beneficiaries' Statement of the Questions Involved clearly violates the provisions of the Rules of Appellate Procedure. Rule 2116(a) requires, explicitly, that "[t]he statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind." Pa.R.A.P. 2116(a). "This rule is to be considered in the highest degree mandatory, admitting of no exception...." *Id.* Contrary to the Rule, the Beneficiaries' Statement of the Questions Involved is encumbered by multiple assertions of fact and conclusions of law that render our task in discerning the substance of the Beneficiaries' grievances significantly more difficult than necessary. Nonetheless, because we conclude that the defective condition of the Beneficiaries' brief is not fatal to our consideration of the issues, we will address the portion of each question stated that we perceive as the gravamen of the Beneficiaries' assertion on appeal.

¶ 18 In their first question, the Beneficiaries appear to state that the orphans' court erred in dismissing their objection to the final accounting relating to the Estate's payments to Fran Every for services rendered as rental agent for the Estate's properties. The Beneficiaries argue that the court applied the burden of proof incorrectly by requiring them to prove the Executor's misfeasance rather than requiring the Executor to justify the expenditure.

¶ 19 Because, as in the prior appeal, we are reviewing aspects of a decree of the orphans' court, we apply a deferential standard of review, as described *supra*. We will reverse the final decree only if the appellants, in this case the Beneficiaries, demonstrate that the court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record. *See Estate of Geniviva*, 675 A.2d at 310.

■ ¶ 20 Upon review of the record, we find no error in the court's distribution of the burden of proof. Our case law requires that those seeking to surcharge an executor must, in the first instance, demonstrate the executor's breach of duty:

When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the

surcharge bear the burden of proving the executor's wrongdoing. However, where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge.

*Id.* at 310. *See also In re Estate of Lohm,* 440 Pa. 268, 273, 269 A.2d 451, 454 (1970). In *Geniviva* we found such a "significant discrepancy" based on the executor's undisputed failure to file federal estate tax returns and Pennsylvania inheritance tax returns for almost four years after the decedent's death. *See Estate of Geniviva,* 675 A.2d at 311. In explanation, the executor posited that he omitted to file the returns on the advice of counsel, notwithstanding specific provisions of the law requiring that he file the returns in a timely manner, *see* 26 U.S.C. § 6075(a); 72 P.S. § 9145(c). *Id.* Consequently, we recognized that the burden of proof properly shifted to the executor.

¶ 21 In this case, the record demonstrates no "discrepancy" even remotely similar in magnitude to the executor's dereliction in *Geniviva.* Concerning the executor's approval of payments to Fran Every, the Beneficiaries agree that the record establishes that the decedent himself engaged Mrs. Every one and one half years prior to his death "to collect his rents for him." Brief for Appellees at 22. While the parties may differ on Every's level of effectiveness in collecting the rents, we fail to discern how the Executor's exercise of discretion in allowing her to continue in her pre-existing role even approximates the undisputed violation of statutory law established in *Geniviva.* Consequently, we must conclude that the burden of proof to establish the executor's wrongdoing remains with the Beneficiaries. *See Estate of Geniviva,* 675 A.2d at 311.

¶ 22 The orphans' court concluded that the Beneficiaries did not meet their burden of proof to establish the executor's dereliction in sanctioning the Estate's relationship with Fran Every. Opinion and Order Sur Exceptions to Adjudication, 4/13/99, at 2. The court reasoned that the Everys' spousal relationship failed to establish the requisite "discrepancy." *Id.* We agree. Moreover, though the Beneficiaries claim that Every's commission rate was excessive, they failed to produce any evidence to establish a proper rate; nor did they establish that Every failed to "collect the rents" as she was paid to do. Consequently, we conclude that the Beneficiaries have failed to establish that the orphans' court abused its discretion in rejecting their claim for a surcharge corresponding to amounts paid to Fran Every.

¶ 23 In their second issue, the Beneficiaries assert that the orphans' court erred in failing to shift the burden of proof to the Executor to show that he had not distributed the executor's commission prematurely. The Beneficiaries contend that because the court incorrectly applied the burden of proof, it arrived at an erroneous conclusion that " 'objectants did not establish that the Estate suffered any losses as a result' of the fact that the executor paid himself his commission very early in the administration . . . ." Brief for Appellees at 25.

¶ 24 Again, as in our discussion of the Beneficiaries' first assertion of error, we find no discrepancy "on the face of the record" sufficient to mandate a shift of the burden of proof. *See Estate of Geniviva,* 675 A.2d at 311. In *Geniviva,* the executor committed a clear and undisputed violation of federal and state tax laws that directly resulted in the assessment of substantial penalties to the estate. *Id.* By contrast, while early distribution of an executor's commission may not represent sound practice, (as the orphans' court recognized), the Beneficiaries fail to establish that the practice is a violation of the Probate, Estates and Fiduciaries Code. Nor is the practice of early distribution necessarily contrary to the Orphans' Court Rules. Orphans' Court Rule 6.11, upon

which the Beneficiaries rely, provides for "Confirmation of Accounts" and does not purport to govern distribution of estate assets. The Rule merely cautions that "any distribution made by a fiduciary shall be made at his own risk unless directed by an adjudication, decree of distribution or order of the court." Pa.O.C.Rules 6.11. We fail to discern how the Executor's assumption of a risk that can only inure to his own detriment should the distribution be disapproved, establishes a violation of his duty to another. Accordingly, the facial discrepancy required by *Geniviva* is plainly absent from this record. Consequently, the orphans' court did not err in requiring the Beneficiaries to carry the burden of proof on this issue.

¶ 25 In their third issue, the Beneficiaries assert that the orphans' court erred in dismissing their objection to the amount of the Executor's commission. The Beneficiaries argue that the commission, paid as a flat rate of 5% of the value of the Estate, is excessive. The orphans' court concluded that the extended length of the probate period, coupled with the complexity of administration of the Estate, merited the fee. Because the court's determination was highly fact-sensitive, we must approach its conclusion with deference. *See Estate of Geniviva,* 675 A.2d at 310. Moreover, the Beneficiaries have failed to adduce any evidence tending to disprove the court's conclusion. Accordingly, we find no error in the determination of the orphans' court that the amount of the Executor's commission was not excessive.

¶ 26 For all of the foregoing reasons, we affirm the order of the orphans' court entering the adjudication and decree nisi as the final decree.

¶ 27 Order **AFFIRMED.**