**In re: Lesa R. DENTLER FAMILY TRUST.**

**Appeal of: Trustees of the Lesa R. Dentler Family Trust**

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.

Filed April 22, 2005.

 

Richard K. Doty, Philadelphia, for appellant.

Arthur L. Jenkins, Jr., Norristown, for participating party.

Before: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 The Orphan's Court, sitting *en banc*, found that the trustees mismanaged the Lesa R. Dentler Irrevocable Family Trust and breached their fiduciary duties to the beneficiaries. The Orphan's Court was clearly correct: the trustees engaged in self-dealing, failed to manage the trust in the interest of the beneficiaries, and breached their trust to the beneficiaries. We affirm.

¶ 2 As the Orphan's Court explained, the underlying facts are as follows:

Richard K. Doty, Esquire, was the scrivener of both the instant family trust and the power of attorney pursuant to which the trust was created. He drafted the power of attorney for Lesa Dentler in 1991 at the request of her son, Roy Dentler. Roy Dentler had been attorney Doty's client [and friend] for many years. The trust was created after Lesa Dentler suffered a fall and was in a rehabilitation facility. Roy Dentler wanted the trust in place because he was afraid his mother would have to go into a nursing home and her assets would be depleted. The trust document was signed under date of January 7, 1998, and named Roy Dentler and attorney Doty as trustees. Roy Dentler immediately transferred $544,000.00 of his mother's assets into the trust. On January 29, 1998, three weeks after the trust was created, Lesa Dentler died.

Article III of the trust provided, in pertinent part, as follows upon the death of Lesa Dentler:

A. Upon my death, the Trustee shall distribute outright Fifty Percent (50%) of the then trust principal being held hereunder to my son, Roy W. Dentler, Jr., if he survives me . . .

B. Upon my death, the Trustee shall hold in a separate trust the remaining Fifty Percent (50%) of the then trust principal for the benefit of my daughter, Geraldine Paukstela if she survives me . . .

C. My Trustee shall invest and manage the share representing my daughter, Geraldine Paukstela, as a separate trust and make distributions as follow[s]:

 1. During Geraldine Paukstela's lifetime:

 a. As much of the net income from her trust shall be paid for her benefit as my Trustee shall, in his sole and absolute discretion, deem necessary for her health, maintenance, and support after consideration of all other resources available to her.

 b. Upon the death of my daughter, Geraldine Paukstela, the share of her trust shall be paid outright to her issue stirpes [sic], or in default of such issue, to those persons who would have been entitled to inherit from me under the Pennsylvania intestate laws as if I had then died intestate and domiciled in the Commonwealth of Pennsylvania.

Geraldine Paukstela survived her mother and is the present income beneficiary. Ms. Paukstela has two daughters, Pamela Barnett and Lisa Willauer.

Sixteen objections were filed to the first account on behalf of Ms. Paukstela by Pamela Barnett (pursuant to a power of attorney executed by Ms. Paukstela under date of April 6, 1998,) by Ms. Barnett in her own right and by Ms. Willauer. The objections to the first account raised the following issues. Numbers 1, 2, 3, and 4 object to the trustees' failure to segregate one-half of the assets at the death of Lesa Dentler and place them in a separate trust for the benefit of Ms. Paukstela. Number 5 asserts a conflict of interest created by Richard Doty's serving as both trustee and investment advisor and receiving compensation for the latter role. Numbers 6, 7, and 8 question the trustees' use of a martin account in managing the funds. Number 9 objects to the investment advisory fees paid to Richard Doty as excessive. Number 10 objects to the distribution to Roy Dentler of $189,315 in February of 2000 for the reasons set forth hereinafter. Numbers 11 and 12 raise the trustees' failure to pay taxes in a timely manner. Number 13, which questions various disbursements, and number 14, which alleges certain investments were improper, were not pursued at the hearing. Numbers 15 and 16 suggest the trustees breached their fiduciary duty and should be surcharged as a result.

The objectants also filed the following objections to the supplemental account: Number 1 incorporated the original 16 objections; number 2 objects to the amount of margin interest paid on the ground the use of the margin account was improper; numbers 3 and 4 object to legal fees paid to Richard Doty and to other counsel; and number 5 questions disbursements for interest and penalties incurred in connection with late tax filings. Numbers 6, 7, and 8 raise questions about specific investment decisions made by the trustees, and were not pursued at the hearings. Number 9 objects to the investment advisory fee paid to Richard Doty. Number 10, relating to

specific disbursements made by the trustees and not listed on the account, was not pursued at the hearings. Number 11 reiterates the request for surcharge against the trustees.

At the hearing on March 18, 2003, counsel for the objectants presented the expert testimony of Lane Taylor, Esquire, who is a partner in the firm of Stradley, Ronon, Stevens & Young. He has specialized in estates and trust matters for over 30 years. He stated that it was inappropriate for attorney Doty, who holds himself out as a professional tax and investment advisor, to use a margin account in administering the instant trust. His reasons for this opinion were: "The identity of the settlor, the fact that she was an elderly woman, the fact that the trust originally had been set up under a power of attorney, the fact that the settlor's daughter, [who is] the primary successor beneficiary of the trust, was mentally disabled and the fact that the stock market at the time was extremely volatile." Attorney Taylor also opined that the trust was not managed properly in light of the protective provisions for the life tenant. Specifically, attorney Taylor explained that attorney Doty's decision to borrow money on margin and pay out $189,315 to Roy Dentler in February of 2000 put the burden of the new debt on Geraldine Paukstela's share of the trust. Attorney Taylor also noted that the investment advisor fees attorney Doty paid himself (2% per annum) exceeded the standard (1% per annum.)

Attorney Taylor noted that attorney Doty prepared Lesa Dentler's final form 1040 for the year 1997. Attorney Taylor pointed out that the trust overpaid the tax due, by approximately $2,000. However, due to the late filing of the return, penalties and interest were charged and the amount of the refund was only $1,302.54. The witness noted that the standard deduction was taken on the 1040, despite the fact that itemized deductions were available which would have reduced the taxable estate.

The trust's federal tax return for 1998 reflected no deductions for fees paid for investment advice. The return was filed in July of 1999; and penalties and interest of $3,591.21 were assessed against the trust due to the late filing. The trust's 1998 Pennsylvania fiduciary return showed tax due in the amount of $1,200. Attorney Taylor could find no corresponding disbursement on the accounts here at issue. The trust's 1999 federal and Pennsylvania returns were also filed late. Attorney Doty paid the Pennsylvania inheritance taxes on the estate of Lesa Dentler in October of 2001—three years late—and incurred interest and penalty charges in the amount of $7,654.93. Attorney Taylor also testified that the trust's federal returns reflected incorrect bases for some of the stocks sold each year.

Based on the actions set forth [above], attorney Taylor opined that attorney Doty's conduct fell below the requisite standard of care for a trustee. He also stated that attorney Doty placed himself in a conflict of interest by wearing three hats—scrivener of the trust document, trustee and investment advisor. Attorney Taylor expressed his opinion that Roy Dentler, even though a layman, as co-trustee with attorney Doty shared the responsibility for seeing that tax returns were properly filed; and, as a result of his failure to follow through, his conduct also fell below the standard required of fiduciaries.

During cross-examination, attorney Taylor acknowledged that the language of the trust here at issue can be read to permit the trustees to borrow against

the stock held by the trust. Counsel for the trustees elicited testimony that Bernard Egan, a certified public accountant, not attorney Doty, prepared some of the tax forms at issue ... Attorney Taylor agreed with the observation of counsel for the trustees that the improper tax bases assigned to some of the trust's stock resulted in the trust's paying less tax than it would have paid if the proper bases had been used.

The next witness for the objectants was Joseph Paul, an investment advisor and portfolio manager, who is chairman of Trident Advisors in Horsham, Pennsylvania. He stated that thirty percent of the assets his company manages are held by trusts. Having reviewed the relevant account statements from Schwab Trust (where the instant trust assets are held,) Mr. Paul testified that the investment strategy was "a bit aggressive" in that almost all of the assets were placed in common stocks. He questioned the trustees' wisdom in selling some of the "blue chip" stocks and retaining others that were performing poorly. Mr. Paul shared attorney Taylor's opinion that the investment advisory fees charged by attorney Doty were excessive. He also opined that margin trading was inappropriate for these assets because of the increased risk. Mr. Paul's analysis showed that the trust performance exceeded the Standard & Poor index for 1998, but lagged behind increasingly during the ensuing years. Mr. Paul's calculations showed that a one-half interest in the trust declined in value from $400,898 just before the cash distribution of $189,315 to Roy Dentler in February of 2000, to $247,809 as of the time of the hearing.

During cross-examination, the investment expert acknowledged that the market did poorly during much of the relevant period, especially after the events of September 11, 2001.

Richard Doty, Esquire, was called as on cross by counsel for the objectants. He stated that he explained to Roy Dentler (but not to the decedent) the conflicts of interest inherent in his (Doty's) multiple roles in this trust. He did not set forth the conflicts in writing or have Roy Dentler waive them in writing. Attorney Doty stated that he borrowed against the securities held in the trust to make the February 2000 distribution to [Roy] Dentler because selling the securities outright would have incurred substantial capital gains tax liabilities. Attorney Doty conceded that he did not file estimated tax payments owed by the trust as is required of a fiduciary.

At the continued hearing on May 20, 2003, the first witness was Roy Dentler, the co-trustee. Much of his testimony paralleled that of attorney Doty. Regarding the late filing of tax returns and the resulting assessments of interest and penalties against the trust, Roy Dentler explained that he relied on attorney Doty and the CPA to handle these matters. He stated that he had reservations about the performance of Mr. Egan, the accountant; however, he did not pursue hiring another accountant because attorney Doty wanted to use Mr. Egan. Roy Dentler echoed attorney Doty's admission that no estimated tax payments were ever made on behalf of the trust. He could not say for sure that any Pennsylvania tax was ever paid on behalf of the trust for 1998.

Regarding the $189,000+ distribution he received in February of 2000, Roy Dentler stated that he wanted the money to purchase a mobile home. He was aware that the trust had insufficient cash to cover this distribution. He said it was attorney Doty's decision to borrow against the securities held in the

Schwab account to raise the cash. He also stated that attorney Doty advised against segregating the funds into two separate portions prior to his taking the cash distribution.

Attorney Doty testified on direct ... examination that he received no fee for drafting either the power of attorney or the trust here at issue. He took investment advisory fees of two percent per annum, but no commissions for serving as trustee. Attorney Doty explained that, for the period in question, he chose not to pay the quarterly estimated taxes for the trust because the money was earning more in the account than the amount of the penalty assessed. He stated that the late payments of the annual taxes were not deliberate actions, they "just happened."

Attorney Doty explained that he bought stock on the margin, in part, to diversify the trust portfolio. He stated that he avoided selling off some of the settlor's original holdings, which had been used to fund the trust originally, because the capital gains tax implications would have been enormous. He stated that his method was to sell these shares when he had losses, in order to counterbalance the capital gains. Mr. Doty commented on the huge decline in the value of the trust from over one million dollars at the beginning of 2000 to less than $200,000. He attributed this to the distribution to [Roy] Dentler, to the payment of taxes (to a lesser extent) and to the decline in the market (to a greater extent.)

Trial Court Opinion, 2/13/04, at 2–10.

¶ 3 As trustees Doty and Dentler argued to the Orphan's Court, neither the above losses, nor the risks they exposed the beneficiaries to, were done in bad faith. And, their argument continued, according to the trust document they could not be found to have breached their duty as trustees with-out such a finding. Therefore, as co-trustees, no sanctions could be levied. The Orphan's Court, however, found that neither was protected under their self-serving trustee cloak and applied the " 'default" provisions governing a fiduciary's responsibilities which are set forth in the Prudent Investor Rule. Trial Court Opinion, 2/13/04, at 14.

¶ 4 Viewing both Attorney Doty and Mr. Dentler as regular fiduciaries, the Orphan's Court then sustained the objections to the accounting and imposed surcharges against Attorney Doty and Mr. Dentler. Important to the current appeal, the Orphan's Court surcharged Attorney Doty for the interest and penalties incurred because of the late tax payments and the interest resulting from his margin trading. The court also required the attorney fees for the objectants to be paid from the trust fund.

¶ 5 The trustees have appealed and allege four broad bases of error. According to appellants:

The Orphans' Court committed an error of law and abused its discretion in finding breaches of duty by the trustees, despite the absence of allegations or proof of bad faith, intentional misconduct, or reckless indifference on their part.

The Orphans' Court committed an error of law and abused its discretion in requiring Richard Doty to disgorge the legal fees and investment advising fees that he earned for administering the estate and imposing substantial legal fees and taxes on Mr. Doty.

The Orphans' Court committed an error of law and abused its discretion in requiring the counsel fees for the objectants to be paid from the trust fund. The Orphans' Court should have dismissed the accounting based on the no-account provision of the trust.

¶ 6 When reviewing a decree entered by the Orphan's Court, we must "[d]etermine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Braun*, 437 Pa.Super. 372, 650 A.2d 73, 75 (1994). It must be remembered, however, the Orphan's Court *is* the fact-finder and thus determines the credibility of all witnesses who may testify. We, who only receive the records of the proceedings, do not reverse the credibility determinations of the Orphan's Court absent an abuse of discretion. *Id.*

¶ 7 The trustees first contend that the Orphan's Court was wrong to apply the Prudent Investor Rule to their standard of care. Stated another way, the trustees argue that the Orphan's Court should not have disregarded the protective provisions regarding standard of care that were written into the trust document and which would only have allowed for a breach of fiduciary duty in the case of "bad faith ... intentional misconduct, or reckless indifference to the interest of [the] beneficiaries." Appellants' Brief, at 23. Appellants are incorrect; the decedent did not set up, ratify, or even know of the trust they helped establish.

¶ 8 As the Orphans' Court hearing showed, neither Roy Dentler nor Attorney Doty informed Lesa Dentler (the settlor) that an irrevocable family trust was being established. Further, Attorney Doty knew that Ms. Dentler had a will (which was prepared by a different attorney), yet Doty never consulted with the scrivener of the will before preparing the trust.

¶ 9 More importantly, Attorney Doty did not tell Ms. Dentler that, by acting as trustee, he was subject to a conflict of interest acting as both the trustee and investment advisor. Moreover, the trust document, unwitnessed by Ms. Dentler, attempted to effectively lower the standard of care Roy Dentler owed to the beneficiaries. As the Orphans' Court explained:

When Lesa Dentler signed the power of attorney in favor of her son, Roy, at Roy's behest ... a fiduciary relationship between the principal and the attorney-in-fact [was created]. Among the many obligations that arise under such a relationship is the attorney-in-fact's duty to act exclusively in the interests of the principal. When Roy Dentler executed the instant trust pursuant to the power of attorney, he was required to use due care for the benefit of his principal. The court is unable to discern any benefit to Lesa Dentler by lowering the standard of care owed to her by her trustees. Accordingly, we find it appropriate to set aside the broad latitude granted by Roy Dentler as attorney in fact and by Richard Doty as scrivener of the trust to Roy Dentler and Richard Doty as trustees of the trust, and to apply the "default" provisions governing a fiduciary's responsibilities which are set forth in the Prudent Investor Rule.

¶ 10 We believe that in this case, the Orphans' Court clearly did not err. It would be an inequity to allow the trustees to hold themselves to such a low standard of care absent Lesa Dentler's knowledge, and, in fact, in the face of her apparent opposition. By setting aside the broad, self-serving protections the trust purported to give to Roy Dentler and Attorney Doty and applying the "default" Prudent Investor Rule, the Orphan's Court struck a balance necessary in this instance.

¶ 11 Thus, since neither Roy Dentler nor Attorney Doty were protected by their self-serving provision, they were subject to the Prudent Investor Rule; the "heart of the prudent investor rule," as set forth in 20 Pa.C.S. § 7203(a), states:

A fiduciary shall invest and manage property held in a trust as a prudent investor would, by considering the purposes, terms and other circumstances of the trust and by pursuing an overall investment strategy reasonably suited to the trust.

20 Pa.C.S. § 7203(a).

¶ 12 Section 7203(c) goes on to list the relevant factors a fiduciary must consider before making "investment and management decisions:"

1) the size of the trust;

2) the nature and estimated duration of the fiduciary relationship;

3) the liquidity and distribution requirements of the trust;

4) the expected tax consequences of investment decisions or strategies and of distributions of income and principal;

5) the role that each investment or course of action plays in the overall investment strategy;

6) an asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries;

7) to the extent reasonably known to the fiduciary, the needs of the beneficiaries for present and future distributions authorized or required by the governing instrument; and

8) to the extent reasonably known to the fiduciary, the income and resources of the beneficiaries and related trusts.

It is under the shadow of this rule that we proceed into appellants' next argument.

 ¶ 13 According to appellants, the Orphan's Court erred by surcharging them for certain losses the trust incurred. As we declared in *Estate of Pew*, a surcharge "is the penalty imposed for failure of a trustee to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care." *In re Estate of Pew*, 440 Pa.Super. 195, 655 A.2d 521, 541 (1994). In regard to the relevant burdens of proof and persuasion, our Supreme Court has stated:

In general, one who seeks to surcharge a trustee bears the burden of proving that the trustee breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the trustee has committed a breach of duty and that a related loss has occurred, .. the burden of persuasion ought to shift to the trustee to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. We believe that, as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

*Estate of Stetson*, 463 Pa. 64, 345 A.2d 679, 690 (1975).

¶ 14 Further, while "a trustee is not liable for a loss in value of the trust property or for a failure to make a profit that does not result from a breach of trust," Restatement (Second) of Trusts § 204, "[i]f the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Restatement (Second) of Trusts § 205.

¶ 15 The first of these allegedly improper surcharges was for the interest and penalties the trust incurred for the late payment of taxes. As the trustees argue, the surcharge was made in error because both trustees were "relying on the services of a certified public accountant who filed the state and federal returns for the Trust." Appellants' Brief, at 27. Appel-

lants' argument is an echo of that used in *Estate of Geniviva*, and is one we have rejected.

¶ 16 In *Estate of Geniviva*, an executor was surcharged for penalties the estate incurred when it failed to pay estate taxes. 450 Pa.Super. 54, 675 A.2d 306, 311 (1996). According to the executor, all of the fault resided with the estate's former attorney who "assured [the executor] that the estate did not owe any federal estate taxes." *Id.* The Orphan's Court, however, found that the executor was aware of the fact that taxes must be timely paid and he could not abdicate his duties by shifting blame: "[t]he ultimate responsibility for the payment of estate taxes falls upon the executor." *Id.*

¶ 17 The same is true in the current case. Here, both Attorney Doty and Roy Dentler were aware of the fact that they had to pay income as well as inheritance taxes and, as trustees, the duty to do so fell to them. They utterly failed, causing the trust to incur over $20,000 in penalties.

¶ 18 The trustees have also argued that the above penalty should not have been charged since "any interest or penalty attributed to late filing was more than compensated for by the appreciation of the stock that he was purchasing on behalf of the Trust at the time." Appellants' Brief, at 27. The trustees, however, did not provide any proof whatsoever that this was the case; and, as the objectants initially proved a breach of fiduciary duty, it fell on them to prove "as a matter of defense, that the loss would have occurred in the absence of a breach of duty." *Pew*, 655 A.2d at 541. They did not do so.

¶ 19 Next, the trustees argue that it was error to find they impermissibly commingled the funds of Roy Dentler with the trust funds. We will postpone this question until later. Yet, as the Orphan's Court was undoubtedly correct to find, the

trust fund was "managed as if Roy [Dentler] were the only party with an interest;" it was not error to find that commingling occurred. Trial Court Opinion, 2/13/04, at 18.

■ ¶ 20 The Orphan's Court also surcharged Attorney Doty with the incurred margin interest the trust was forced to pay. While appellants characterize the ruling as "Monday-morning quarterbacking," it was not; it was also not an abuse of discretion. Appellants' Brief, at 31.

¶ 21 According to appellants, their margin trading was proper since: "the Trust instrument permitted it[ ] and ... it enabled the Trustees to raise cash for the distribution to Roy Dentler without selling stocks, which would result in substantial capital gains tax." *Id.* This is incorrect. As the Orphan's Court explained:

> "Margin" is the term for borrowing money from a broker. The practice is risky for a number of reasons, including the facts that the investor can lose more money that he or she has invested, or may have to deposit additional cash or securities into the account on short notice to cover market losses, or may be forced to sell securities when falling stock prices reduce the value of the portfolio. Furthermore, the brokerage firm may sell some o[r] all of the securities, without consulting the investor, to pay off the loan.

Trial Court Opinion, 2/13/04, at 17.

¶ 22 As the Orphan's Court found, in this case, by trading on margin, Attorney Doty violated his fiduciary duties to Geraldine Paukstela. By trading on margin to fund the Roy Dentler distribution, Attorney Doty had leveraged Ms. Paukstela's share of the trust. Yet, he was the trustee for both Roy Dentler and Ms. Paukstela and, thus, owed them the same standard of care. *Estate of Pew*, 440 Pa.Super. 195,

655 A.2d 521, 524 (1994) (*stating:* "When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them."). In this instance, the high-risk margin trading was all done at the risk of Ms. Paukstela's share and caused the trust to incur a very substantial liability that was not for Ms. Paukstela's benefit, but rather was incurred at her detriment. Because of Attorney Doty's improper risk leverage and improper management of the trust, the surcharge was not an abuse of discretion.

■ ¶ 23 Next, appellants argue that Attorney Doty was wrongly required to "disgorge the legal fees and investment advising fees that he earned for administering the estate." Appellants' Brief, at 33. In this case the Orphan's Court was correct to allow this remedy. Here, all of Attorney Doty's fees were incurred as a result of his trustee role. Yet, as the Orphan's Court found, and as we agree, he helped manage the trust "as if Roy [Dentler] were the only party with an interest." Trial Court Opinion, 2/13/04, at 18.

¶ 24 This is evident not only in the improper risk taken with Ms. Paukstela's share, but also with the absolute failure of Attorney Doty to abide by the set terms of the trust. According to the trust document, Roy Dentler was to receive an outright 50% distribution upon Lesa Dentler's death. This distribution did not occur until years later and, when it was finally accomplished, it was done at the extreme risk to Ms. Paukstela's share. As such, not only did Attorney Doty violate the duty he owed to Ms. Paukstela, but also engaged in the commingling of Roy Dent-

ler's money with the trust fund. And, because of this extreme violation of the fiduciary relationship, it was not an abuse of discretion to "direct Richard Doty to reimburse the trust for the entire amount he received as investment advisor." Further, because the trustees did not prevail in the underlying action, Attorney Doty's claim for legal fees was also properly refused.

■ ¶ 25 The final two arguments appellants bring to our Court are meritless. First, appellants argue that the Orphan's Court should not have allowed the expenses incurred by the objectants in this action to be paid from the trust fund. Yet, appellants have no standing to appeal this issue since Roy Dentler has now disclaimed all interest in the remainder of the trust assets and Attorney Doty was never a beneficiary of the trust. *Estate of Lowry,* 485 Pa. 395, 402 A.2d 1020 (1979).

¶ 26 Finally, appellants contend that the "no-accounting" provision of the trust renders this entire action "indefensible." Appellants' Brief, at 36. Yet, as is clear from the above, the provision cannot protect the trustees in their extreme breaches of fiduciary duty.[1]

¶ 27 Order AFFIRMED. Motions DENIED.

---

1. Appellees have also filed two motions in our Court. The first is a motion to quash because of violations of our Rules of Appellate Procedure. This motion is denied. In the second motion, filed pursuant to Pennsylvania Rule of Appellate Procedure 2155(b), appellees seek to allocate the costs of, what they view to be, an unnecessary reproduction of the record. While we are sympathetic to appellees' position, in this instance much of the record was beneficial to our analysis. The motion is thus denied.