J-A13040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  THE THOMAS G. GOODWIN REVOCABLE LIVING TRUST | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| IN RE:  MARIE GOODWIN a/k/a MARIE WILKINS | : : | No. 1124 WDA 2015 |

Appeal from the Order entered on June 22, 2015
in the Court of Common Pleas of Fayette County,
Orphans' Court at  No(s):  18-OC-2014

BEFORE:  OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:  **FILED SEPTEMBER 28, 2016**

Marie Goodwin a/k/a Marie Wilkins ("Goodwin") appeals from the Order granting the Petition for Rule to Show Cause and Motion for Declaratory Judgment filed by Thomas Goodwin, Jr., Douglas Goodwin, and Peggy Goodwin (collectively "Petitioners"), which challenged Goodwin's oversight of the Thomas G. Goodwin ("Decedent") Revocable Living Trust ("Trust") and her management of the Trust and estate assets.  We affirm.

The Orphans' Court set forth the relevant underlying factual history in its Opinion, which we adopt for the purpose of this appeal.  **See** Orphans' Court Opinion, 9/9/15, at 3-6.

On May 1, 2014, Petitioners filed a Petition for Rule to Show Cause and Motion for Declaratory Judgment.  On May 30, 2014, Goodwin filed an Answer and New Matter.  Petitioners filed a Reply to the New Matter.  On June 26, 2014, Petitioners sought to amend the Petition for Rule to Show

Cause and Motion for Declaratory Judgment to clarify that Goodwin was named in her capacity as the Trust's representative and not in an individual capacity. The Orphans' Court granted Petitioners' request, after which Petitioners filed an Amended Petition for Rule to Show Cause and Motion for Declaratory Judgment. Goodwin filed an Answer and New Matter. Petitioners filed a Reply to the New Matter.

The Orphans' Court held hearings on the matter on October 16, 2014, and December 18, 2014. Thereafter, on June 22, 2015, the Orphans' Court entered Findings of Fact, Conclusions of Law, and an Order granting Petitioners' Petition and Motion, and entering judgment in their favor. Specifically, the Orphans' Court directed Goodwin to convey to Petitioners the property at 166 Chestnut Lane, Normalville, Pennsylvania ("the Normalville property"), satisfy any liens paid by Petitioners in connection to the Normalville property, and pay attorney's fees incurred by Petitioners.[1]

Goodwin filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.[2] The Orphans' Court issued an Opinion.

On appeal, Goodwin raises the following questions for our review:

---

[1] In a Motion for Payment of Fees, Petitioners stated that they incurred $12,076.00 in attorney's fees and paid $881.29 in real estate taxes in connection with the Normalville property.

[2] Goodwin also filed a Motion to Stay Pending Appeal, which the Orphans' Court denied.

1. Whether the [Orphans' Court] committed an error of law and[/]or abused its discretion in determining that personal property of the estate must be used to pay expenses before expending trust assets[,] when Pennsylvania law and the language of [D]ecedent's will and [T]rust specifically provide that trust assets are to be used to pay expenses of both trust and estate administration?

2. Whether the [Orphans' Court] committed an error of law and/or abused its discretion in concluding that the [Normalville] property should be conveyed to Petitioners immediately when[,] under the Pennsylvania Probate, Estates and Fiduciaries Code, the [Normalville] property specifically devised to [] Petitioners would abate and be used to pay the expenses of the [T]rust and/or estate administration?

3. Whether the [Orphans' Court] committed an error of law and[/]or abused its discretion in determining that [Goodwin] violated her duty to administer the Trust, violated her duties of loyalty and impartiality to the other beneficiaries and/or committed a breach of trust?

4. Whether the [Orphans' Court] committed an error of law or abused its discretion in assessing a judgment of any liens and attorney fees against [Goodwin] in favor of [] Petitioners?

5. Whether the [Orphans' Court] committed an error of law and[/]or abused its discretion in concluding that [Goodwin] is not entitled to recover attorney's fees when the clear language of the Trust provides for payment of attorney's fees?

Brief for Appellant at 3-4.

Our standard of review from a final order of the Orphans' Court is as

follows:

[W]e accord the findings of the [O]rphans' [C]ourt, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an [O]rphan[s' C]ourt decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has

> been an error of law, an abuse of discretion, or a capricious disbelief of competent evidence.
>
> Moreover, we will not reverse the [Orphans' C]ourt's credibility determinations absent an abuse of the court's discretion as fact-finder. On the other hand, we are not required to give the same deference to [the Orphans' C]ourt's legal conclusions. Where the rules of law on which the [Orphans' C]ourt relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Trust of Hirt*, 832 A.2d 438, 447 (Pa. Super. 2003) (citations, quotation marks and some brackets omitted).

In her first claim, Goodwin contends that the Orphans' Court erred in determining that the personal property of the estate must be used in paying expenses of the Trust prior to utilizing the Trust's assets. Brief for Appellant at 11, 14-16. Goodwin argues that the clear language of the Will and the Trust documents demonstrates that all of Decedent's assets were to be placed within the Trust, and that the assets of the Trust were to be used to pay the taxes and expenses of the Trust. *Id*. at 12-13, 14, 15, 16; *see also id*. at 12 (wherein Goodwin points out that under the Trust, the terms "trust assets" and "trust estate" include "all assets of any trust created hereunder and income derived from such assets and all proceeds of any description derived from the sale, exchange, or other disposition of such assets."). Goodwin also argues that the Orphans' Court erroneously found that she failed to inventory or account for Decedent's personal property. *Id*. at 15-16. Goodwin asserts that "there is nothing to account for that would be of

more than *de minimis* value and[,] for the most part[,] has been distributed to [] Petitioners." ***Id***. at 16.

The Orphans' Court set forth the relevant law, addressed Goodwin's claims, and determined that they are without merit. ***See*** Orphans' Court Opinion, 9/9/15, at 6-9, 10-11; ***see also In re Estate of Cherwinski***, 856 A.2d 165, 167 (Pa. Super. 2004) (stating that "[t]he findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support."). We adopt the sound reasoning and conclusion of the Orphans' Court for the purpose of this appeal. ***See*** Orphans' Court Opinion, 9/9/15, at 6-9, 10-11.

In her second claim, Goodwin contends that the Orphans' Court erred in requiring that the Normalville property must immediately be conveyed to Petitioners. Brief for Appellant at 17, 21. Goodwin argues that there were insufficient trust assets to satisfy the expenses of the estate without the liquidation of assets, including the Normalville property. ***Id***. at 17-19. Goodwin points out that she issued payments for a number of expenses totaling $14,796.82. ***Id***. at 17-18. Goodwin asserts that both the Trust and the Will provide that all expenses from the estate must be paid by the assets in the Trust. ***Id***. at 19. Goodwin claims that 20 Pa.C.S.A. § 3541 governs the order of abatement, where the trust assets are insufficient to pay

expenses. *Id*. at 19-20. Goodwin argues that under section 3541, "property specifically devised or bequeathed for the benefit of the surviving spouse shall have priority in terms of distribution over property specifically devised or bequeathed to or for the benefit of [D]ecedent's issue." *Id*. Goodwin thus claims that the Normalville property could be used by the estate to pay expenses prior to the conveyance to Petitioners. *Id*. at 20.

The Trust Agreement states the following, in relevant part:

**Section 1.01 – Trust Estate Defined**
… The "Trust Estate" is defined as all property transferred or conveyed to and received by the Trustee held pursuant to the terms of this instrument. The Trustee is required to hold, administer, and distribute this property as provided in this Trust Agreement.

* * *

**Section 3.02 – Payment of Death Expenses**
On the death of the Settlor, the Trustee shall pay from the Trust Estate constituting [*sic*] the Settlor's last illness, funeral, burial and any inheritance, estate, or death taxes that may be due by reason of the Settlor's death, unless the Trustee in his or her absolute discretion determines that other adequate provisions have been made for the payment of such expenses and taxes.

* * *

**Section 8.03 – Personal Property Distribution**
Notwithstanding any provision of this Trust Agreement to the contrary, the Trustee must abide by any memorandum by the Settlor, particularly that contained in the section entitled "Special Directives" incorporated into this Trust Instrument….

* * *

**SPECIAL DIRECTIVES (SECOND)**
I direct that all estate and inheritance taxes payable as a result of my death, not limited to taxes assessed on property, shall be

> paid out of the residue of my Estate, and shall not be deducted or collected from any Legaltee, Devisee, or Beneficiary hereunder.

Trust Agreement, 1/25/06, at 1, 5, 14, 17; **see also** General Amendment to Trust Agreement, 1/5/08, at 2 (unnumbered) (wherein Decedent directed that Petitioners are to be "given the property located at 166 CHESTNUT LANE, NORMALVILLE, PA."); Will, 1/25/06, at 1 (wherein Decedent "provided for the payment of all my debts, expenses of administration of property wherever situated passing under this Will or otherwise, and estate, inheritance, transfer, and succession taxes … that become due by reason of my death, under the [Trust].").

The Orphans' Court set forth the relevant law, addressed Goodwin's claims, and determined that they are without merit. **See** Orphans' Court Opinion, 9/9/15, at 9-10 (addressing Goodwin's abatement argument); 11-12 (stating that Decedent made a specific devise of the Normalville property to Petitioners); **see also** Findings of Fact and Conclusions of Law, 6/23/15, at 4-5 (noting that Goodwin, in her capacity as Trustee, distributed Decedent's personal items that were made part of the trust, and transferred approximately $22,000 from Decedent's savings account to joint checking account held by Goodwin and Decedent); N.T., 12/18/14, at 61, 63, 67 (wherein Goodwin admitted that she moved over $22,000 from Decedent's savings account to a checking account, and never put any of the money into an account for the Trust or estate); **In re Estate of Blumenthal**, 812 A.2d

1279, 1290 (Pa. Super. 2002) (stating that "[t]he will must control the distribution of the estate, and when [its] language is clear and explicit, [its] intention thus plainly expressed must be obeyed regardless of any apparent or real inequalities produced among the legatees.") (citation omitted).  We adopt the sound reasoning of the Orphans' Court for the purpose of this appeal.  *See* Orphans' Court Opinion, 9/9/15, at 9-10.

In her third claim, Goodwin contends that the Orphans' Court abused its discretion in determining that she violated her duty to administer the Trust, violated her duties of loyalty and impartiality, and committed a breach of trust.  Brief for Appellant at 21.  Goodwin argues that in her role as Trustee under the Trust, she had total discretion in interpreting all questions of construction and interpretation of the Trust, and her interpretations were binding upon the beneficiaries.  *Id*. at 22.  Goodwin asserts that her interpretation of the language of the Trust "has been taken in good faith and would control over any purported violation of her duty to administer the [T]rust, her duty of loyalty or duty of impartiality."  *Id*. at 23.  Goodwin claims that she distributed items to Petitioners, including jewelry, guns, and golf clubs.  *Id*.  Goodwin also argues that the deed to the Normalville property was defective and thus she retained an interest in the property.  *Id*. at 24.  Goodwin points out that she took action to minimize taxes, as only half of the Normalville property was taxable.  *Id*.  Goodwin further

claims that she failed to pay the property taxes on the Normalville property because the Trust assets had been exhausted. *Id*. at 25.

The Orphans' Court addressed Goodwin's claims and determined that they are without merit. *See* Orphans' Court Opinion, 9/9/15, at 11-14 (addressing the specific devise of the Normalville property and whether the deed was defective), 14-15 (addressing Goodwin's breach of trust, her violation of her duty to administer the Trust, and violation of duties of loyalty and impartiality). Upon our review of the Trust Agreement and Will, we agree with the reasoning of the Orphans' Court and affirm on this basis. *See id*.

In her fourth claim, Goodwin contends that the Orphans' Court abused its discretion in "assessing a judgment of any liens and attorney fees against [Goodwin] and in favor of [] Petitioners." Brief for Appellant at 26. Goodwin argues that the Orphans' Court erroneously indicated in its Rule 1925(a) Opinion that it was imposing a surcharge upon Goodwin. *Id*. at 26, 27. Goodwin asserts that the court improperly failed to provide her the required opportunity to be heard before imposing a surcharge. *Id*. at 26. Goodwin additionally claims that she did not breach her duty under the Trust, which prevented the imposition of the surcharge. *Id*. at 27.

> The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal. The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate. Surcharge is the remedy when a trustee fails to exercise

common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care.

The court must find the following before ordering a surcharge: (1) that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to the trust. Where there is no breach of fiduciary duty, there is no basis for a surcharge. Even if there is a breach of duty, however, where there is no loss, there is no basis for a surcharge.

*In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010) (citations, quotation marks, and footnote omitted).

"Before the court can impose a surcharge, it must give the executor an opportunity to be heard." *In re Estate of Westin*, 874 A.2d 139, 145 (Pa. Super. 2005).

In general, one who seeks to surcharge a trustee bears the burden of proving that the trustee breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the trustee has committed a breach of duty and that a related loss has occurred, … the burden of persuasion ought to shift to the trustee to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. …[A]s between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

*In re Dentler Family Trust*, 873 A.2d 738, 745 (Pa. Super. 2005) (citation omitted).

[W]hen determining the proper surcharge to be imposed, we are guided by the Restatement (Second) of Trusts. …

Restatement § 204 provides that a trustee is not liable for a loss in value of the trust property or for a failure to make a profit that does not result from a breach of trust. Conversely, Restatement § 205 provides, "If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any

- 10 -

profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Comment (a) explains that in choosing among these three remedies, the beneficiary has the option of pursuing the remedy that will place him in the position in which he would have been if the trustee had not committed the breach.

*In re Scheidmantel*, 868 A.2d 464, 493 (Pa. Super. 2005) (citation omitted). Furthermore, "[e]valuating the reasonableness of the amount of a surcharge is within the province of a trial court. Absent an abuse of discretion, we will not disturb a trial court's finding." *In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa. Super. 2011) (citation omitted).

Initially, contrary to Goodwin's claim, the Orphans' Court held hearings on the matter, wherein Goodwin presented evidence and testimony. *See, e.g.,* Findings of Fact and Conclusions of Law, 6/23/15, at 1-5 (setting forth the relevant evidence presented by the parties at the hearings). Further, the Orphans' Court found that Goodwin breached her fiduciary duty; the breach caused a loss to the Trust; and Petitioners are entitled to a surcharge of liens and attorney's fees. *See* Orphans' Court Opinion, 9/9/15, at 14-15, 17; *see also* Findings of Fact and Conclusions of Law, 6/23/15, at 8, 9-10. Based upon the foregoing, we conclude that the Orphans' Court's finding that Goodwin's actions caused a loss to the Trust is supported by competent evidence and the record is free of legal error. *See In re Trust of Hirt*, 832 A.2d at 447. Thus, the Orphans' Court properly surcharged Goodwin because she breached her fiduciary duties. *See* Orphans' Court Opinion,

9/9/15, at 14-15, 17; *see also In re Dentler Family Trust*, 873 A.2d at 745; *In re Scheidmantel*, 868 A.2d at 493.[3]

In her final claim, Goodwin contends that the Orphans' Court abused its discretion by finding that she is not entitled to recover attorney's fees from the Trust. Brief for Appellant at 28. Goodwin argues that the Orphans' Court erroneously denied her claim for attorney's fees based upon her administration of the Trust. *Id*. Goodwin also asserts that Article Four, Section 4.03 of the Trust Agreement permits the Trustee to employ counsel to defend any claim or controversy against the Trust. *Id*. at 28-29; *see also id*. at 29 (wherein Goodwin claims that the Probate, Estates and Fiduciaries Code supports her claim for attorney's fees).

The Orphans' Court set forth the relevant standard of review, addressed Goodwin's claims, and determined that they are without merit. *See* Orphans' Court Opinion, 9/9/15, at 16-17. We agree with the Orphans' Court's sound reasoning, and conclude that the court did not abuse its discretion in denying Goodwin's claim for payment of attorney's fees from the Estate. *See id*.

---

[3] Goodwin also claims that the Orphans' Court abused its discretion by imposing the attorney's fees against her in her individual capacity. Brief for Appellant at 26 n.5. However, aside from a single bald statement, Goodwin has not provided any analysis or citation to authority to support her claim. *See* Pa.R.A.P. 2119(a) (stating that an argument must contain "such discussion and citation of authorities as are deemed pertinent."). Thus, we conclude that this claim is waived. *See In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (stating that "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal.").

Order affirmed.

Judge Stabile joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016

FILED
09/09/2015 9:51:36 AM
REGISTER OF WILLS
FAYETTE COUNTY
PENNSYLVANIA
Inst Num: 201509230

**IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA**

IN RE: THOMAS G. GOODWIN
REVOCABLE LIVING TRUST

ORPHAN'S COURT DIVISION

No. 18-OC-2014

# OPINION

*Robert W. King, Esq. for the Respondent*
*Derek J. Illar, Esq. for the Petitioners*

*LESKINEN, J.*

Before the Court is a "Statement of Matters Complained of Pursuant to Pennsylvania Appellate Rule of Appellate Procedure 1925(b)" that was filed on August 14, 2015 on behalf of Respondent Marie Goodwin, a.k.a. Marie Wilkins (hereinafter "Respondent"). Through counsel, Thomas Goodwin, Jr., Douglas Goodwin, and Peggy Goodwin (hereinafter "Petitioners") filed Petitions for Rule to Show Cause, disputing Respondent's oversight of the Trust and her management of Trust and estate assets. The Court then held hearings on the allegations in the Petitions on October 16, 2014 and December 18, 2014. After consideration of the testimony from the hearings, the Court ruled in favor of Petitioners and against Respondent on all issues. This timely appeal followed.

Respondent raises the following issues:

"1.     Whether the Lower Court committed an error of law and or abused its discretion in determining that personal property of the estate must be used to pay

ITEM NO. 37

expenses before expending trust assets when Pennsylvania law and the language of the decedent's will and trust specifically provide that trust assets are to be used to pay expenses of both trust and estate administration?

2.      Whether the Lower Court committed an error of law and or abused its discretion when it determined that without an inventory or account Respondent could not use trust assets to cover expenses of estate and trust administration when the Petitioner's Petition was premature when administration of the estate and trust had not concluded including the filing and confirmation of an account?

3.      Whether the Lower Court committed an error of law and/or abused its discretion in concluding that the property should be conveyed to Petitioners immediately when under Pennsylvania law and the terms of the Trust and the Will, the trust assets should be liquidated and used to pay the expenses of the trust and/or administration and/or be subject to imposition of a lien?

4.      Whether the Lower Court committed an error of law and/or abused its discretion in concluding that the property should be conveyed to Petitioners immediately under the Pennsylvania Probate, Estates and Fiduciaries Code, the property specifically devised to the Petitioners would abate and be used to pay the expenses of the trust and/or estate administration?

5.      Whether the Lower Court committed an error of law and or abused its discretion in determining that the Respondent violated her duty to administer the Trust and would be responsible for any unpaid expenses?

6.      Whether the Lower Court committed an error of law and or abused its discretion in determining that the Respondent violated her duties of loyalty and

2

impartiality to the other beneficiaries and/or committed a breach of trust?

7.     Whether the Lower Court committed an error of law and or abused its discretion in concluding that the Respondent is not entitle (sic) to recover attorney's fees when the clear language of the Trust provides for payment of attorney's fees?

8.     Whether the Lower Court committed an error of law or abused its discretion in assessing attorney fees against the Respondent in her individual capacity when as found by the Lower Court the Respondent was appearing in her dual capacity as representative of the Trust and of the Estate?

9.     Whether the Lower Court committed an error of law or abused its discretion in assessing a judgment of any liens and attorney fees against the Respondent in favor of the Petitioners?"

## BACKGROUND

Respondent was married to Thomas G. Goodwin ("Decedent" or "Settlor"). (Hr'g Tr. 8, Dec. 18, 2014). Decedent passed away on February 24, 2011, leaving behind his wife, as well as Petitioners, Thomas Goodwin, Jr., Douglas Goodwin, and Peggy Goodwin, his children. *Id.* at 8-9. Decedent executed a Revocable Living Trust Agreement ("Trust") and a General Amendment to the Trust ("Amendment") on January 25, 2006. (Exs. A-B). Decedent also executed a Last Will and Testament (Pour-Over Will, hereinafter "Will") on January 25, 2006. (Ex. C). Respondent was named as First Successor Trustee upon Thomas G. Goodwin's death and Executrix of the Will. (Ex. B, at 2; Ex. C, at 2).

All assets, including personal property, were transferred to the Trust by the Will. (*See* Ex. A, at Sec. 1.02(7); Ex. C, at 1). Under the Special Directives of the Trust,

3

Decedent bequeathed specific property to his heirs. Respondent was to receive the house and contents at 1311 Hawthorne Street, Connellsville, PA 15425, as well as all the automobiles. (Ex. A, at 17-18; Ex. B, at 2). Petitioners were to receive the property at 166 Chestnut Lane, Normalville, PA. (Ex. B, at 2).

Respondent was appointed to act as Personal Representative of Decedent's estate in May, 2011. When Thomas G. Goodwin died, Respondent did not inventory the Trust assets or locate any accounting or financial statements for the Trust. (Dec. Hr'g Tr. 10). Respondent's counsel also did not conduct an appraisal of any personal property belonging to Decedent. *Id.* at 91.

After Thomas G. Goodwin's death, Respondent transferred the Connellsville property from the Trust to herself. (Ex. G). Respondent, however, failed to transfer the Normalville property to Petitioners as directed by the Trust. (Dec. Hr'g Tr. 14, 27, 44, 74). The Deed that had transferred the Normalville property to the Trust referred to the Trust, in error, as "The Thomas A. Goodwin Revocable Living Trust." (Ex. E).[1] Respondent's counsel took the position that the Deed was therefore ineffective, allowing the Normalville property to remain in the name of Respondent and Decedent as assets of the estate, with Respondent's half interest remaining tax free. (Dec. Hr'g Tr. 74). Subsequently, Respondent and her counsel agreed for the first time just prior to the October 16, 2014 hearing before this Court that the Normalville property was a Trust asset. (Rule Show Cause Hr'g Tr. 8, 14, Oct. 16, 2014; Dec. Hr'g Tr. 15, 77).

In her role as Trustee, Respondent has paid various Trust expenses, including

---

[1] Significantly, the attorney who prepared the Deeds (Exs. E-F), and probably the rest of the documents, has since been disbarred for "egregious misconduct" in directing laypersons to counsel clients, usually senior citizens, on the benefits of living trusts, failing to consult with clients regarding estate planning, and acting on behalf of his own interests over those of his clients, all in furtherance of his "living trust scheme." *Office of Disciplinary Counsel v. Brett B. Weinstein*, No. 54 DB 2011, 25-30 (Pa. 2014).

4

administrative expenses, funeral bills, grave marker, inheritance tax, and legal fees, totaling around $22,000. (Dec. Hr'g Tr. 20-21, 75-76; *see also* Goodwin Aff., Jan. 8, 2015). In 2011, Respondent gave Peggy Goodwin the tax bill for the Normalville property to pay the taxes. (Dec. Hr'g Tr. 18). Thereafter, Peggy Goodwin paid the taxes on the Normalville property in 2011. *Id.* at 26. Respondent failed to pay the property taxes on Normalville in 2012, 2013, and 2014. *Id.* at 18. Petitioners collectively paid the property taxes on Normalville in 2012 and 2013 to save the property from an upset tax sale. *Id.* at 26. The Normalville property again came up for tax sale in 2014 because the taxes were not paid. *Id.* at 28-29. Respondent took absolutely no action in keeping the property from tax sales in 2012, 2013, and 2014, all while taking the inconsistent position of asking Petitioners to pay the taxes, but refusing to transfer the property to them, even when they paid the taxes amid Respondent's continuing neglect.

Respondent asserts that she ceased paying the property taxes because she had no money left to administer the estate. *Id.* at 19, 76-78. Any expenses thereafter were paid by Respondent's counsel or by Respondent. *Id.* at 77. However, upon Decedent's passing, he possessed several personal effects, including, *inter alia*, two, possibly three, rings, a gold chain, a UPS watch, golf clubs, firearms, one Scottdale Bank and Trust checking account, and one Scottdale Bank and Trust savings account. *Id.* at 10-13, 23-25, 35, 37, 40-41, 114-15). Some of these personal assets were distributed at Respondent's discretion; for example, Respondent gave one gold ring to Decedent's grandson, Ryan Rugg, and the gold chain to her brother, Phillip Shawley. *Id.* at 12-13. In addition, Respondent had financial power of attorney and made transfers in excess of

5

$22,000 from Decedent's savings account to their joint checking account just prior to and after Thomas G. Goodwin's death. (Ex. 2; Dec. Hr'g Tr. 56-68). Upon closure of the savings account, the balance was $853.21. (Dec. Hr'g Tr. 67). Respondent did not put any of this money into an account for the Trust or the estate, but into the checking account in Decedent's name. *Id.* at 63, 67-68.

## DISCUSSION

### *Trust/Estate Expenses*

Issues 1 and 2 relate to whether the estate has sufficient assets to pay the Trust's administrative expenses. The Court will first address these two issues. The prevailing law in Pennsylvania is that the pole star in every trust (and in every will) is the settlor's (or testator's) intent and that said intent must prevail. *Estate of Pew*, 655 A.2d 521, 533 (Pa. Super. 1994). The rules for determining a settlor's intent are the same for a trust as for a will. *In re Scheidmantel*, 868 A.2d 464, 488 (Pa. Super. 2005). The settlor's intent is ascertained from a consideration of "(a) all the language contained in the four corners of the instrument and (b) the distribution scheme and (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created and (d) 'the existing facts.'" *Id.*

In this case, all Decedent's personal and household effects were transferred to the Trust by virtue of the Will. (Ex. C, at 1). The Will further states that should there be "any questions regarding the ownership or disposition of these assets, it is [Decedent's] desire that such assets pour into the Revocable Trust…in accordance with the provisions of the section titled 'Residue of Estate.'" *Id.* The "Residue of Estate" provision in the Will reads as follow:

6

> I give, devise and bequeath all the rest, residue and remainder of my property of every kind and description (including lapsed legacies and devices [sic]), wherever situated and whether acquired before or after execution of this Will, to the Trustee under that certain Trust executed by me on the same date of the execution of this Will. *The Trustee shall add the property bequeathed and devised by this item to the corpus of the above described Trust and shall hold, administer and distribute said property in accordance with the provisions of the said Trust, including any amendments thereto made before my death.*

(Ex. C, at 1) (emphasis added).

Under Section 3.02 of the Trust, "On the death of the Settlor, the Trustee shall pay from the Trust Estate constituting the Settlor's last illness, funeral, burial and any inheritance, estate, or death taxes that may be due by reason of the Settlor's death, unless the Trustee in his or her absolute discretion determines that other adequate provisions have been made for the payment of such expenses and taxes." (Ex. A., at 5). Specifically, Decedent declared in Special Directive Second "that all estate and inheritance taxes…not limited to taxes assessed on property, *shall be paid out of the residue of my Estate, and shall not be deducted…from any Legatee, Devisee, or Beneficiary.*" (Ex. A, at 17) (emphasis added). Thus, the residue of the estate must be used to pay expenses before expending Trust assets at a detriment to beneficiaries. Special Directive Second is further confirmed in the Will under "Debts, Taxes and Administration Expenses" where it provides "for the payment of all my debts, expenses of administration of property…and estate, inheritance, transfer, and succession taxes" that are due upon the death of Thomas G. Goodwin. (Ex. C, at 1).

Under Special Directive Sixth, Respondent was to receive the Connellsville house "and contents" upon Decedent's passing. (Ex. B, at 2). Respondent's counsel argues that since Decedent bequeathed the Connellsville house "contents" to her,

7

Decedent's personal property is not "residue" and should not be used to pay expenses. It appears none of the instruments define "contents," so the intention of the Settlor controls. *See In re Coffman's Estate*, 46 Pa. D. & C.2d 555, 559 (Pa. Orph. 1968) (finding bequest of "contents of my home" not to include certificates of deposit found in testator's home valued at one-half his estate based on lack of clear intent). Generally, items such as furniture, electrical appliances, silverware and pictures in the house upon death of the testator, will pass as a bequest of "contents" of the house. *In re Lamb's Estate*, 285 A.2d 163, 164 (Pa. 1971). By contrast, "contents" of the house does not include money, bank accounts, watches, jewelry, and cash or stocks found in the house at the time of death. *In re Baker's Estate*, 434 A.2d 1213, 1215 (Pa. 1981); *Matter of Estate of Rudy*, 478 A.2d 879, 881 (Pa. Super. 1984).

Here, the record demonstrates that, immediately upon Decedent's passing, Respondent mismanaged property that rightly belonged in the Trust. Respondent gave away Decedent's jewelry to several relatives after his death, items that Decedent bequeathed to the Trust. (Dec. Hr'g Tr. 12-13). She also admitted to using her power of attorney to close the savings account after his death, an account with an ending balance of $853.21. *Id.* at 63, 67. Notwithstanding that this bank account was not even bequeathed to her as "contents," she also lacked authority to move this money to a personal checking account. Power of attorney ceases upon the death of the party giving it, unless the power is coupled with an interest rendering it irrevocable. *Green Acres Rehab. and Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1270 (Pa. Super. 2015). The Will expressly states that all "personal and household effects" are transferred to the Trust, and if there is any question regarding ownership or disposition of these assets,

8

they should pour into the Trust. (Ex. C, at 1). As Trustee, Respondent took no action to ascertain the disposition or ownership interest of any of Decedent's personal property immediately after his death, but rather, she presumed certain assets were hers alone to use or distribute. Thus, Respondent has no viable argument in claiming the aforementioned assets are her bequeathed house "contents" and not "residue" to be used for expenses.

Respondent also argued to the Court that 20 Pa.C.S.A. § 3541 must govern abatement in this situation, where Trust assets are insufficient to pay all claimants in full, and thus, Respondent, as surviving spouse, shall have priority over Petitioners as Decedent's issue. Respondent asserts that there are insufficient Trust assets to satisfy expenses without the liquidation of said assets. Respondent further claims the only means of paying expenses is to sell the Normalville property, pursuant to statute. The statute declares:

> (a) General Rules.--*Except as otherwise provided by the will*, if the assets are insufficient to pay all claimants and distributees in full, the shares of distributees, without distinction between real and personal estate, shall have priority of distribution in the following order:
>
> (1) Property specifically devised or bequeathed to or for the benefit of the surviving spouse.
>
> (2) Property specifically devised or bequeathed to or for the benefit of the decedent's issue.

20 Pa.C.S.A. § 3541 (emphasis added).

The statute does not apply, however, because Decedent specifically considered insufficient assets in the "Debts, Taxes and Administration Expenses" section of his Will. He stated, "If the Revocable Trust assets *should be insufficient* for [payment of expenses], *my Executor shall pay any unpaid items from the residue of my Estate*

9

*passing under this Will, without any apportionment or reimbursement."* (Ex. C, at 1) (emphasis added). Counsel's insistence that Trust assets must be used to pay all expenses is not only inaccurate pursuant to this language, but entirely inequitable to Petitioners. In hindsight, both Respondent and her counsel failed to even consider that Trust assets might eventually be insufficient and the residue of the estate would be necessary to pay expenses. As mentioned, Respondent incorrectly assumed ownership for herself of Decedent's personal property as bequeathed "contents," when in fact, some these items were residue of the estate, which should have been used to pay expenses.

Respondent and her counsel also take issue with this Court's ruling that they failed to inventory or account for any of Decedent's personal property in paying Decedent's expenses, as required under the Will. Counsel further argues that a Petition for Rule to Show Cause was premature because administration of the Trust had not concluded. We cannot accept this argument. The reason for the Petition was because Respondent's counsel asked to liquidate the Normalville property to satisfy expenses at a detriment to Petitioners. Without an accounting of Decedent's personal property, Respondent cannot liquidate Trust assets specifically devised to Petitioners, as beneficiaries, in order to pay expenses. *See In re Sorschek's Estate*, 37 Pa. D. & C.2d 424, 428 (Pa. Orph. 1965), *aff'd*, 221 A.2d 131 (Pa. 1966) (holding where taxes and costs of administration exceed value of residuary estate, property bequeathed as residue abated before bequests specifically bequeathed). Thus, counsel's insistence that Trust assets alone should cover expenses here is incorrect as a matter of law.

Moreover, counsel labelling the Petition as "premature" completely bypasses the

10

reason for the Court's ruling in the first place. It has been more than four years since Thomas Goodwin died. Respondent, as First Trustee, has openly acknowledged never reading the Trust Agreement, Amendments, or Special Directives. (Dec. Hr'g Tr. 9-10). She further stated that her attorney managed all Trust activities after Decedent's death, and she could not say what type of management activities her attorney performed. *Id.* at 10. As such, her attorney's management of the Trust has brought us to a point where Trust assets are depleted and a ruling to inventory Decedent's personal property was necessary to satisfy outstanding expenses. But for the actions of Respondent's counsel, this Court would not have been compelled to render any decision to inventory outstanding assets prior to a final accounting. Counsel's attempt to ignore this central fact is ineffective and the issue is without merit.

### *Distribution of Property*

In issues 3 and 4, Respondent claims the Court erred in ruling the Normalville property should be immediately conveyed to Petitioners. A specific devise may be satisfied only by delivery of the particular thing. *In re Estate of Balter*, 703 A.2d 1038, 1041 (Pa. Super. 1997). Testator's intent is not relevant where the property devised or bequeathed in the will is not part of the estate at death. *Id.* "Where the legacy has been determined to be specific '[t]he legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him." *Id.*

Section 3.01 of the Trust specifies, the Trustee "shall distribute the principal of the Trust and any accrued or undistributed income from the principal of the Trust" in accordance with the Trust Agreement. (Ex. A, at 5). In Special Directive Sixth, Decedent instructed for a specific devise of the Connellsville property to Respondent

11

and a transfer of the Normalville property to Petitioners. (Ex. B, at 2). According to the Trust, Respondent is to receive the residue of the Trust Estate after giving effect to the Special Directives. (Ex. B, at 1). The Trustee "must abide by any memorandum by the Settlor, particularly that contained in the section entitled 'Special Directives'" as part of the Trust, "directing the disposition of Trust Assets of every kind including, but not limited to, furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel" and all insurance policies in connection with use of property. (Ex. A, at 14).

Here, it is clear the Decedent made a specific devise of the Normalville property to Petitioners, despite counsel's erroneous position that the property remains with Respondent. The Deed transferring the Normalville property to the Trust referred to the Trust, in error, as "The Thomas A. Goodwin Revocable Living Trust." During argument, Respondent's counsel maintained that the Deed was therefore ineffective, allowing the Normalville property to remain in the name of Respondent and Decedent as assets of the estate, with Respondent's half interest being tax free. (Dec. Hr'g Tr. 74). The Court finds this argument both misleading and flawed. It is true that mistake by the scrivener of a trust instrument is but one ground to reform the trust to comply with the settlor's intentions. *Irish v. Irish*, 65 A.2d 345, 346 (Pa. 1949). However, "whether the mistake be unilateral or bilateral, the quality of proof required to establish the existence of the mistake is the same; that proof of the mistake must be established by evidence that is 'clear, precise, convincing and of the most satisfactory character.'" *In re Duncan's Estate*, 232 A.2d 717, 720 (Pa. 1967) (quoting *In re LaRocca's Trust Estate*, 192 A.2d 409, 412 (Pa. 1963)).

12

In this case, the evidence that the incorrect middle initial was a mistake was of "clear, precise, convincing and of the most satisfactory character." Despite the obvious fact that the middle initial was a mere "scrivener's error," the record illustrates that Respondent's counsel unilaterally decided the Deed was defective and that the property would not transfer to the Trust. This view is not only contrary to Pennsylvania law, but untenable. There is no valid reason that the Deed, on its face, should be considered defective merely for an incorrect middle initial. In all other respects, the Deed was correct. The Court heard no evidence that "The Thomas *A.* Goodwin Revocable Living Trust" was not in fact the very same Trust at issue in this case, and could possibly be confused with a completely different trust. Furthermore, as addressed *supra*, the attorney who prepared the Deed has been disbarred from the practice of law in Pennsylvania for his "extremely egregious" conduct in selling fraudulent and misleading living trusts to clients. *Office of Disciplinary Counsel v. Brett B. Weinstein,* No. 54 DB 2011, 29 (Pa. 2014). Despite this glaring indication that Decedent's Trust Agreement might not have been completely sound, Respondent and her counsel acted one-sidedly and inaccurately interpreted the Trust and the Deed in Respondent's favor only. Upon discovery of the Deed error, Respondent and her counsel did not act in the best interest of the Trust, but rather, used the error as justification to favor only Respondent's interests.

Notably, even though Respondent's counsel claimed the Deed was faulty and the property did not transfer to Petitioners, Respondent gave the 2011 Normalville tax bill to Peggy Goodwin to pay the property taxes, which Peggy did pay. Respondent then failed to pay the property taxes in 2012, 2013, and 2014, forcing Petitioners to pay the

13

taxes in 2012 and 2013 to save the property from a tax sale. The property was again subject to a tax sale in 2014 because Respondent did not pay the taxes. In addition, Respondent's counsel, after pleading to the contrary, agreed for the first time just prior to the October 16, 2014 hearing before this Court that the Normalville property should indeed be a Trust asset. (Rule Show Cause Hr'g Tr. 8, 14, Oct. 16, 2014; Dec. Hr'g Tr. 15, 77).

### Respondent's Duties

Respondent next argues, in issues 5 and 6, that the Court erred in finding her in violation of duties to administer the Trust loyally and impartially. As Trustee, Respondent is under a duty to the beneficiaries to administer the Trust. In general, "[t]he trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." *In re Paxson Trust I*, 893 A.2d 99, 119 (Pa. Super. 2006) (quoting *Estate of McCredy*, 470 A.2d 585 (Pa. Super. 1983)). The rule prohibits both self-dealing and conflicts of interest. *Id.* Thus, the trustee must neither 1) deal with trust property for the benefit of herself or third parties, nor 2) place herself in a position inconsistent with the interests of the trust. *Id.*

By failing to inventory and account for all assets, and by failing to challenge her transfers from Decedent to herself, pre and post-mortem, Respondent violated her duties. By refusing to transfer the Normalville property to Petitioners, and further refusing to acknowledge until October 16, 2014 that the Normalville property was properly a Trust asset, Respondent violated her duty to administer the Trust.

Because she did not inventory or appraise the assets, the Petitioners and the Court can never know the value of the assets she misapplied or misused. Once a

14

breach of fiduciary duty is established, the orphans' court may impose a surcharge to compensate for any loss resulting from the fiduciary's breach. *In re Jerome Markowitz Trust*, 71 A.3d 289, 303 (Pa. Super. 2013). Additionally, the Superior Court has suggested the orphans' court may impose a surcharge as punishment for the fiduciary's improper conduct. *Id.* Consequently, Respondent is responsible for any unpaid expenses for failure to properly administer.

This Court also found that Respondent violated her duties of loyalty and impartiality to the other beneficiaries. Respondent failed to inventory and appraise personal property within the Trust, transferred Trust property to herself prior to full payment of any outstanding debts, and allowed the Normalville property to remain dormant for a period of years; she also asked the beneficiaries to pay the taxes on that property. *See* 20 Pa.C.S.A. § 7773; *In re Estate of Miller*, 18 A.3d 1163, 1172 (Pa. Super. 2011) (finding a trustee owes a duty of loyalty or candor to trust beneficiaries). "[I]f the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Restatement (Second) of Trusts § 205 (1959). Thus, a breach of trust makes the breaching trustee chargeable with any resulting profit. *Paxson Trust*, 893 A.2d at 122. The Court again affirms that Respondent must convey the Normalville property to Petitioners forthwith. In addition, any liens paid by Petitioners in connection with the property will be entered as a personal judgment against Respondent, including attorney's fees incurred by Petitioners in litigating this matter.

15

### Attorney's Fees

Lastly, in issues 7, 8, and 9, Respondent claims the Court erred in finding she is not entitled to attorney's fees, in assessing attorney's fees against her in her individual capacity, and in assessing a judgment of liens and attorney fees against Respondent in favor of Petitioners. Under 20 Pa.C.S.A. § 7775, Respondent as Trustee may incur costs that are reasonable in relation to trust property, the purposes of the trust, and the skills of the trustee. Attorney's fees in an estate are based on the reasonable value of services rendered and are subject to the approval of the orphans' court. *Dorsett v. Hughes*, 509 A.2d 369, 371 (Pa. Super. 1986). Where a trustee advances her own money for payment of expenses relating to the administration of the trust, she may be entitled to recover costs, including attorney's fees from the trust itself, except as otherwise provided by the trust terms. *See In re Wormley's Est.*, 59 A.2d 98, 100 (Pa. 1948) (finding in an *unsuccessful* attempt by beneficiary to surcharge trustee, trustee was allowed to pay for counsel fees out of trust in defending suit).

Counsel's argument here is that "any time the Trust is sued, there is the right of the personal representative to a defense and to indemnification and for her to hire counsel." (Dec. Hr'g Tr. 84). Section 4.03 states, "The Trustee may maintain and defend any claim or controversy by or against the Trust without the joinder or consent of any Beneficiary. The Trustee may commence or defend at the expense of the Trust any litigation with respect to the Trust or any property of the Trust Estate as the Trustee may deem advisable. The Trustee may employ, for reasonable compensation, such counsel as the Trustee shall deem advisable for that purpose." (Ex. A, at 8-9).

Despite these provisions, however, the Court found Respondent liable for

16

wrongdoing in her administration of the Trust. Where a trustee retained counsel in litigation, the trustee might not be reimbursed from the trust for fees paid to such counsel when such litigation was necessitated by the wrongdoing of the trustee. *Lessig v. Natl. Iron Bank of Pottstown*, 20 A.2d 206, 207 (Pa. 1941).

In this case, Respondent's counsel took the clearly erroneous legal position that the Deed of the Normalville property was defective. Beneficiaries were kept uninformed or misinformed. They were asked to pay taxes on property then told they would not get that property.

The Court has never approved any of the fees charged by Respondent's counsel, and it is unlikely that the fees claimed will ever be approved. Moreover, the fees incurred by the beneficiaries are all the direct result of the egregiously incorrect positions taken by Respondent and her counsel.

Therefore, if the assets of the Trust are ultimately insufficient to pay all counsel fees, the reasonable counsel fees of the beneficiaries (in an amount yet to be determined) are to be paid first. If the reasonable counsel fees of the beneficiaries exceed the ability of the Trust to pay, then the balance of those fees are an appropriate penalty for Respondent's mishandling of the Trust and unfair treatment of the beneficiaries.

## CONCLUSION

For the aforementioned reasons, the Court finds no substance with any of Respondent's claims on appeal, and affirms its judgment in favor of Petitioners and against Respondent.

17

BY THE COURT:

_____
STEVE P. LESKINEN, JUDGE

ATTEST:

_____
REGISTER OF WILLS

9/9/2015 - Copies Sent To:
Robert W King, Atty.
Melissa A Guiddy, Atty.
Derek J Illar, Atty.

FILED
REGISTER OF WILLS
2015 SEP 9 AM 8 39

18