J. S47033/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  EVA G. SELLERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  ELIZABETH S. FISCHER | : | No. 306 EDA 2017 |

Appeal from the Order Entered December 7, 2016,
in the Court of Common Pleas of Montgomery County
Orphans' Court Division at No. 2015-X-3184 (Principal)

| | | |
|---|---|---|
| IN RE:  EVA G. SELLERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  ELIZABETH S. FISCHER | : | No. 329 EDA 2017 |

Appeal from the Order Entered December 7, 2016,
in the Court of Common Pleas of Montgomery County
Orphans' Court Division at No. 2016-X-2320

BEFORE:  LAZARUS, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 19, 2017**

Elizabeth S. Fischer ("Fischer") appeals the orders of the Court of Common Pleas of Montgomery County that denied her motion for partial summary judgment at No. 2015-X-3184 and granted the motion for partial summary judgment filed by Cristy Sellers ("C. Sellers"), administratrix of the estate of Eric S. Sellers at No. 2016-X-2320 and stated that Fischer had no authority to create an irrevocable Medicaid Income-Only Trust and had no authority to transfer property to a trust not in existence on the date the

power of attorney was signed. As a result, the trial court deemed the trust invalid and void and ordered and decreed that the transfer to the trust of the house located at 570 King Road, Limerick, Pennsylvania ("Property"), was invalid. The trial court further ordered that the Property must be included as an asset on any amended account filed by Fischer as agent under the power of attorney of Eva Geiger Sellers ("Mother"). After careful review, we affirm in part and quash in part.

### I. Factual Background.

The record reflects that Mother had three children: Fischer, Steven Sellers, and Eric Sellers ("Sellers"), the deceased husband of C. Sellers. Mother named Fischer as the agent under a Durable Power of Attorney dated November 4, 2009. Under the power of attorney with respect to real property, Fischer was given the power to manage, sell, or transfer any real property that Mother owned at the time or would later acquire. Fischer also had the power to execute deeds, mortgages, releases, satisfactions, and other instruments relating to real property and interests in real property that she owned or would later acquire.

As Mother's health worsened, she moved to a nursing home/assisted living facility on June 28, 2010. Fischer, in agreement with her brothers, consulted an elder law attorney who recommended the creation of an Irrevocable Medicaid Trust ("Trust"). Fischer, as agent and attorney-in-fact

of Mother, created the Trust on July 12, 2010 and acted as trustee. The Property was placed in the Trust and valued at $254,250.

On December 20, 2010, the Trust sold the Property to Fischer's daughter, Devon Ann Hepburn ("Hepburn"), under an installment land contract. The contract was structured to include an $80,000 deposit, 96 payments of $931.82, and the balance due after Hepburn turned 30 years old. The Property was the only asset in the Trust.

Mother died on November 28, 2011. Sellers died on February 20, 2012. His widow, C. Sellers, was named the administratrix of Sellers's estate.

## II. Power of Attorney.

On September 15, 2015, C. Sellers filed a petition to show cause why an account should not be filed with respect to Fischer's administration as agent under the durable power of attorney from November 4, 2009 through the date of Mother's death on November 28, 2011. On September 18, 2015, the trial court awarded a citation returnable on October 19, 2015 for Fischer and successor Steven Sellers to show cause why they should not file an account.

On December 18, 2015, following a telephone conference, Fischer was ordered to file an account of the administration of her agency from November 4, 2009, through November 28, 2011, by December 30, 2015. The accounting stated an opening balance of $93.52, income of

$203,453.26, expenses of $202,695.39, and a closing balance of $1,251.39. The biggest source of income was $101,000 from the Trust as payments received from Hepburn. The two biggest expenses were payments of $82,760.17 to Wells Fargo Mortgage and $81,142.15 for payments to long-term care facilities.

On January 28, 2016, the estate of Eric S. Sellers, as represented by C. Sellers, objected to the accounting on the basis that Fischer did not have authority to create the Trust or transfer the Property to it. C. Sellers also objected to the lack of personal property listed, the lack of itemized amounts and payment dates for income and expenses, the accuracy of the long-term care expenditures, and to the Property-related expenses as some expenses would be post-transfer of the Property. C. Sellers also objected to the payment of $3,000 to Joseph Masiuk, an elder care attorney, as she believed that the payment was for the preparation of the Trust which she did not believe was authorized by the power of attorney. She also objected to the inclusion of home sale preparation expenses as Fischer did not sell the Property as agent but transferred it to the Trust. C. Sellers also objected in general with Fischer's agency and alleged that she commingled funds between her duties as agent under the power of attorney and as trustee under the Trust. She also alleged that Mother lacked capacity to execute the power of attorney.

By order dated May 5, 2016, the trial court ordered Fischer to file an amended account of her administration of agency on or before June 1, 2016 with specific itemization of each receipt and expense. The trial court also ordered Fischer to file an account in her capacity as trustee of the trust during the agency period to which real estate of the principal was transferred to the trust. The trial court later extended the due date for the accounts.

On June 28, 2016, Fischer filed the amended accounting for her agency under the power of attorney. The opening balance was $3,392.59, income was $220,602.82. Expenses totaled $221,752.93. The final balance at time of Mother's death was $1,251.39.

On July 29, 2016, C. Sellers as representative of Eric S. Sellers's estate objected to the amended power of attorney account. C. Sellers reiterated her objections concerning the Property and the personal property and objected to the bundling of some income and expense items. She also objected to transactions paid after the death of Mother and to the accuracy of the accounting. She again objected to expenses for the Property and the validity of the power of attorney itself.

On August 16, 2016, Fischer filed an amended power of attorney accounting. The totals were the same, though some categories were broken down in more detail. On that same date, Fischer filed a petition for adjudication/statement of proposed distribution.

On October 28, 2016, Fischer answered C. Sellers's objections and sought dismissal of all of the objections. Fischer asserted the affirmative defenses of the statute of limitations and the doctrine of equitable estoppel.

On October 31, 2016, Fischer moved for partial summary judgment and the dismissal of C. Sellers's objections. Fischer alleged that C. Sellers knew of the transfer of the Property to Hepburn and the formation of the Trust as early as October 27, 2010, such that the objections were not raised in a timely fashion and were barred by the statute of limitations and the doctrine of laches. Similarly, C. Sellers demonstrated that she knew of the Trust in 2012, which Fischer believed was another reason why the objections were time-barred. She also asserted that the objections were impermissible under the doctrine of equitable estoppel because the Trust distributed significant funds beginning in 2013 and Hepburn made significant improvements to the Property with the knowledge of and without objection by C. Sellers. On October 31, 2016, Fischer submitted an affidavit in which she averred that her brothers agreed to the creation of the Trust, and that she was advised by counsel that the power of attorney authorized the creation of the Trust. She further averred that her attorney advised her to sell the Property under a land installment contract. She also averred that after Sellers's death, she visited his widow, C. Sellers, and informed her in February 2012 of the Trust and the sale of the Property under the Land Installment Agreement.

C. Sellers replied and denied the material allegations. In new matter, she asserted that she did not know of the existence of a power of attorney until November 9, 2014, when she found a copy of it on the Montgomery County Recorder of Deeds website. C. Sellers asserted that Fischer's failure to raise any affirmative defenses in a timely answer to the petition for account should result in waiver of those defenses.

On December 7, 2016, the trial court denied Fischer's motion for summary judgment. On December 19, 2016, Fischer moved for reconsideration. On December 21, 2016, the trial court denied the motion for reconsideration.

### III. Trust Accounting.

On June 29, 2016, Fischer filed a trust accounting for the Trust which set forth the value of the Property at $254,250. Distributions to Mother of $93,045.48 were made before her death. A distribution of $12,345.45 was made to Mother's estate. Fischer, Steven Sellers, and Eric Sellers's children each received $12,136.17. The Trust received payments from September 2010 to June 2016 of $153,386.46 from Hepburn.

On July 29, 2016, C. Sellers, in her capacity as representative of the estate of Eric Sellers, objected to the accounting for the Trust. C. Sellers objected to the validity of the Trust itself as she believed that Fischer did not have authority under the power of attorney to create it. Among C. Sellers' other objections were that the Trust was contrary to Mother's estate

planning wishes and distributions to Mother during her lifetime constituted both income and principal while Mother was only entitled to income. C. Sellers also objected to the accuracy of the accounting and objected to Fischer's failure to conform to the duties of a trustee. C. Sellers asked the trial court to uphold her objections and to surcharge Fischer for C. Sellers's fees and costs caused by Fischer's breaches of her fiduciary duties.

On August 16, 2016, Fischer filed a petition for adjudication/statement of proposed distribution of the Trust.

On October 29, 2016, the estate of Eric S. Sellers moved for partial summary judgment and alleged the following:

> 8. The POA [power of attorney] did not authorize the Agent to create a trust. POA Section III, Powers of Attorney-In-Fact on POA page 3 enumerates specific authority given to the agent. In that section, page 5 ESTATE AND TRUST TRANSACTIONS, the Agent is only empowered "To act for me in all matters that affect a trust, probate estate, guardianship, conservatorship, escrow, custodianship or other fund for which I am now, claim to be or later become entitled, as a beneficiary, to a share or payment," or "Transfer any of my property to a living trust that I created as a grantor before this Power of attorney was signed."

> 9. The Trust is invalid as its creation was not authorized by the POA.

> 10. POA Section III, REAL ESTATE TRANSACTIONS, on page 3, granted the Agent power to transfer real estate on behalf of the Principal, but as per overall terms of the POA, only for the benefit of the Principal and not for

the benefit of third parties or furtherance of any estate planning goals of the Principal or beneficiaries.

11. POA Paragraph 6, No Personal Benefit, on page 7, states "Except as specifically provided for in this document, my attorney-in-fact is prohibited from personally benefitting from any transaction engaged in or on my behalf. . . ."

12. On December 20, 2010 the Trustee sold the House to her daughter under a Land Installment Contract, which gave her daughter eight years to pay the full purchase price.

13. Subsequent to the sale, the Trustee, in violation of Trust terms, distributed both income and principal received under the Land Installment Contract to Principal, the total amount of which was $93,045.48 from September 2010 to November 2011, the month of Principal's death. This total is stated in an account filed by the Trustee with this Honorable Court on June 29, 2016 . . . . The total appears on page 4, "Distributions to Eva Sellers prior to her death."

14. At the time of her death, $212,879.43 was still owing on the Land Installment Contract, the majority of which was principal due the Trust. This total is calculated by deducting the $93,045.48 from the "Total Payments to Trust under Installment Contract" stated by the Trustee on account page 5 as $305,924.91.

15. The Principal did not empower the Agent to sell her house and give the equity to a trust, or otherwise in any way encumber the equity therein or use that equity for the benefit of anyone other than the Principal.

16. The Principal during her lifetime may have desired to live in the House, or the full House

equity could have been needed to provide for her needs.

17. The Agent's transfer of the House to an Irrevocable Trust was a breach of her fiduciary duty to the Principal, as the House transfer was done solely to spend down the Principal's assets for estate planning purposes, and only yielded a benefit to the Principal's beneficiaries, not to the Principal.

18. Per paragraph 6 of the POA, the transfer of the House violated the terms of the POA as it was done to yield a benefit to the Agent, and such benefits are expressly prohibited.

19. The unauthorized payment by the Trustee of some of the Trust corpus to the Principal did not relieve the agent of her duty to use the entire asset value of the House for the benefit of the Principal, and to keep it within her control during her lifetime.

[20.[1]]The transfer of House to the Trust was therefore invalid, as there was never a validly created Trust to receive the House. It was also invalid in that the POA did not empower the Agent to perform any actions not for the benefit of the Principal, and the transfer of House to an irrevocable trust where only a partial distribution of the House equity value was distributed to the Principal for her benefit constituted a breach of the agent's fiduciary duty to the Principal.

Estate of Eric S. Sellers's motion for partial summary judgment, 10/29/16 at 2-4, ¶¶ 8-19.

---

[1] The motion lists two number "19" paragraphs in the motion rather than 19 and 20.

C. Sellers, on behalf of the estate of Eric S. Sellers, sought an order that declared the Trust invalid, the transfer of the Property invalid, and listed the Property as an asset on any amended accounts filed by Fischer under the Power of Attorney. Fischer denied the material allegations in the motion.

On December 7, 2016, the trial court granted the motion and determined that Fischer had no authority to create the Trust and no authority to transfer the Property to a trust not in existence on the date the power of attorney was signed. The trial court further ordered that the Property must be included as an asset in any amended account filed by Fischer as agent under the power of attorney. The trial court deemed the order final pursuant to Pa.R.A.P. 342(2).

On December 19, 2016, Fischer moved for reconsideration. The trial court denied the motion on December 21, 2016. By this point, the two separate proceedings were consolidated. On January 5, 2017, Fischer filed a notice of appeal to this court.

## IV. Appeal.

On appeal, Fischer raises the following issues for this court's review: "Did the [t]rial [c]ourt err when it granted [C. Sellers's] Motion for Summary Judgment on the scope of the power of attorney? Did the [t]rial [c]ourt err when it denied [Fischer's] Motion for Summary Judgment on [sic] based on the statute of limitations, doctrine of laches, and estoppel?" (Fischer's brief at 2.)

### A. C. Sellers's Motion for Summary Judgment.

Initially, Fischer contends that the evidence established a genuine issue of material fact with respect to the scope of the power of attorney such that the trial court erred when it granted C. Sellers's motion for summary judgment.

This court's review of a decision of an Orphans' Court is as follows:

> Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.
>
>> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-679, *appeal denied*, 758 A.2d 1200 (Pa. 2000). (internal citations and quotation marks omitted). "[T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2003).

*In re Estate of Whitley*, 50 A.3d 203, 206-207 (Pa.Super. 2012) (internal citations and quotation marks omitted).

This court reviews a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

> [O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary

> judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.
>
> ***Gutteridge v. A.P. Green Services, Inc.***, 804 A.2d 650, 651 (Pa.Super. 2002).

***Wright v. Allied Signal, Inc.***, 963 A.2d 511, 514 (Pa.Super. 2008) (citation omitted).

Specifically, Fischer argues that the terms of the power of attorney were ambiguous and the trial court ignored the facts that she and her two brothers were in agreement that it was proper to create the Trust and that they acted on the advice of an elder care attorney that supported their authority to create the Trust. Fischer argues that this court should not defer to the trial court's determination that the plain language in the power of attorney did not permit the creation of the Trust.

The trial court determined that the Power of Attorney contained the following pertinent provisions which did not allow Fischer to create the Trust:

- To act for me in all matters that affect a trust, probate estate, guardianship, conservatorship, escrow, custodianship or other fund from which I am now, claim to be or later become entitled, as a beneficiary, to a share or payment.

- Transfer any of my property to [a] living trust that I created as a grantor *before this Power of Attorney was signed.*

Trial court opinion, 1/26/17 at 2 (emphasis supplied by the trial court).

The trial court further reasoned that Fischer did not have authority to create the Trust for the benefit of Mother. The trial court added:

> The appellant's averments -- that the trust was created "with the agreement of her brothers" and with the advice of an elder law attorney -- cannot be considered facts not in dispute at this stage of the proceedings. Furthermore, even if shown to be true, these allegations could not override the specific provisions of the power of attorney and are not material to the question of the interpretation of the authority of the agent under the power of attorney. In this case, the Court determined the provisions of the power of attorney are explicit, clear and not ambiguous. Consequently, [Fischer] did not have the authority under the power of attorney to create a trust and did not have the authority to transfer her mother's home into the trust.

*Id.* at 2-3.

A review of the Power of Attorney confirms the determination of the trial court. Under the power of attorney, Fischer did not have the authority to create the Trust and place the Property into it.

Fischer next contends that her actions were authorized under the current statutes and case law of the Commonwealth because in Pennsylvania an agent acting under a general power of attorney has considerably broad authority under 20 Pa.C.S.A. § 5601. However, Fischer admits that while agents acting pursuant to a valid power of attorney are permitted to exercise the broad powers granted to them under the statute, the specific power of attorney document limits this authority. Here, the power of attorney did not give Fischer the authority to create the Trust.

## B. Fischer's Motion for Summary Judgment.

With respect to the denial of her motion for summary judgment, Fischer asserts that C. Sellers did not object to the sale of the Property to Hepburn, the creation of the Trust, the improvements to the Property made by Hepburn, or the receipt of payments from the Trust.

Before addressing the merits of Fischer's argument, this court must address C. Sellers's contention that the order that Fischer appeals is not appealable because it is not a final order.

Rule 342 of the Pennsylvania Rules of Appellate Procedure, entitled Appealable Orphans' Court Orders, provides in pertinent part:

> **(a)** **General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:
>
> (1) An order confirming an account, or authorizing or directing a distribution from an estate or trust;
>
> (2) An order determining the validity of a will or trust;
>
> (3) An order interpreting a will or a document that forms the basis of a claim against an estate or trust;
>
> (4) An order interpreting, modifying, reforming or terminating a trust;
>
> (5) An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship;

> > (6) An order determining an interest in real or personal property;
> >
> > (7) An order issued after an inheritance tax appeal has been taken to the Orphans' Court pursuant to either 72 Pa.C.S. § 9186(a)(3) or 72 Pa.C.S. § 9188, or after the Orphans' Court has made a determination of the issue protested after the record has been removed from the Department of Revenue pursuant to 72 Pa.C.S. § 9188(a); or
> >
> > (8) An order otherwise appealable as provided by Chapter 3 of these rules.

Pa.R.A.P. 342(a).

C. Sellers argues that none of these provisions applies to the matter at hand. To clarify, Fischer is appealing the denial of her motion for partial summary judgment after C. Sellers filed objections to the accounting for Fischer's actions under the power of attorney. Fischer argues that Pa.R.A.P. 342(a)(3-4) apply here. However, the denial of Fischer's motion for partial summary judgment is not an order interpreting a will or a document that forms the basis of a claim against an estate or trust. While the order declaring the Trust invalid and granting the motion for summary judgment of C. Sellers may have qualified, this order does not. Similarly, this order denying Fischer's motion for partial summary judgment does not interpret, modify, reform, or terminate a trust. At this point in the proceedings, this order is unappealable.

Affirmed in part; quashed in part. Affirm the order that granted C. Sellers's motion for partial summary judgment, and quash Fischer's appeal of the denial of her motion for partial summary judgment.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/19/2017</u>