J-S37031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: PERSON AND ESTATE OF J.P.D., AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.P.D. | : : : : : : : : | |
| | : | No. 987 EDA 2025 |

Appeal from the Decree Entered February 19, 2025
In the Court of Common Pleas of Lehigh County Orphans' Court at No(s):
2024-OC-2079

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED DECEMBER 30, 2025**

Appellant, J.P.D., appeals from the Decree entered in the Court of Common Pleas of Lehigh County, Orphans' Court division, deeming Appellant an incapacitated person needing guardianship services.  Herein, Appellant charges error with the Decree because, he contends, Petitioner Lehigh Valley Hospital-Cedar Crest Campus failed to carry its burden to present clear and convincing evidence that he was incapacitated and in need of guardianship services.  We affirm.

The orphans' court provides an apt summary of the relevant procedural history, facts, and issued raised in the present appeal:

> This appeal arises out of [the orphans' court's] February 19, 2025, [Decree],[fn1] which determined that Appellant, [J.P.D.], was an incapacitated person in need of a limited guardian of the person and  plenary guardian of the estate, pursuant to 20 Pa.C.S.A. §

_____

[*] Former Justice specially assigned to the Superior Court.

5501, et seq.[fn2] . . . [Appellant's] case began on December 4, 2024, when Lehigh Valley Hospital-Cedar Crest Campus filed a *Petition for Determination of Incapacity and Appointment of a Plenary Guardian of the Person and of the Estate of [J.P.D.] Pursuant to 20 Pa.C.S.A. § 5511, et seq.* ("Petition"). The Petition alleged that Appellant was totally impaired and in need of plenary guardian of the person and of the estate.[fn2] On February 13, 2025, [the orphans' court] held a plenary hearing, at which Appellant appeared via advanced communication technology (Zoom) and was represented by his court-appointed counsel, Richard E. Santee, Esquire. During the hearing, Appellant had the opportunity to cross examine witnesses and present witnesses and evidence on his behalf.

---

Fn1 [The orphans' court incorporates by reference its February 19, 2025, Decree].

Fn2 Pennsylvania's Decedents, Estates and Fiduciaries Code, Incapacitated Persons Chapter[, 20 Pa.C.S. § 5501 et seq.].

---

After the plenary hearing, [the orphans' court] entered the February 19, 2025, [Decree], which granted the Petition, in part, and denied the Petition, in part. Based [on what the orphans' court determined was] clear and convincing evidence, [the orphans' court] found that Appellant is an incapacitated person, within the meaning of 20 Pa.C.S.A. § 5501, et seq., and that he needs a limited guardian of the person and a plenary guardian of the estate. The February 19, 2025, [Decree] also terminated Richard E. Santee, Esquire's, appointment as counsel for Appellant, upon notification to Appellant regarding his appellate rights.

On March 21, 2025, Appellant, through Richard E. Santee, Esquire, timely filed his *Notice of Appeal* from [the orphans' court's] February 19, 2025 [Decree]. . . . On March 31, 2025, [the orphans' court] entered an Order reappointing Richard E. Santee, Esquire, as counsel for Appellant for purposes of appeal.

. . .

On April 22, 2025, Appellant filed his [orphans' court-ordered, counseled Statement of Matters Complained of on Appeal ("Concise Statement"). . . . In his Concise Statement, Appellant contends that [the orphans' court] committed six errors, which are reproduced verbatim:

1. Whether the trial court erred in Paragraph 10 of its [Decree] of February 19, 2025, in granting to the limited guardian of the person the power and authority to determine where Appellant shall reside and all matters regarding Appellant's general care, maintenance and custody, when there was not clear and convincing evidence that Appellant lacked capacity to determine where to reside and care for himself, and the Appellant provided competent evidence and testimony that he wanted to return home and could care for himself, the Petitioner's expert witness testified that Appellant was not impaired with respect to Appellant's ability to communicate decisions and respond to emergency situations, and the only competent evidence of Appellant's abilities prior to hospitalization was provided by Appellant in terms of his ability to live using a wheelchair and scooter.

2. Whether the trial court erred in failing to consider less restrictive alternatives such as a guardianship support agency or a referral to the Allentown Housing Authority to assist the Appellant in his goal of returning to his home.

3. Whether the trial court erred in appointing a limited guardian of the person or a plenary guardian of the estate when the Appellant testified that he was capable of caring for himself.

4. Whether the trial court erred in failing to direct or require a limited guardian of the person to make arrangements to return Appellant to his home or another apartment in the building where Appellant resided prior to hospitalization.

5. Whether the trial court erred in finding that clear and convincing evidence existed to support a

finding that a limited guardian of the person was required.

6. Whether the trial court erred in finding that clear and convincing evidence existed to support a finding that a plenary guardian of the estate was required.[]

Orphans' Court Opinion, 5/20/25, at 1-3.

Both the orphans' court and the parties agree that each of Appellant's six questions presented falls within one or the other of two broader questions asking whether the orphans' court erred in deeming Appellant an incapacitated person or whether it erred in failing to select a less restrictive alternative to guardianship. We address each question in turn.

Our standard of review of the findings of an orphans' court is deferential, as we have observed that "the orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Leipold*, 208 A.3d 507, 510 (Pa. Super. 2019) (citations omitted and some formatting altered). In that regard,

> [w]hen reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000), *appeal denied*, ...758 A.2d 1200 ([Pa.] 2000) (internal citations and quotation marks omitted). . . .
>
> *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa. Super. 2012) (cleaned up)).
>
> We further observe that:
>
> > The appointment of a guardian lies within the discretion of the trial court and will be overturned only upon an abuse of discretion. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.
>
> *In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001) (internal citations and quotation marks omitted).

*In re J.V.D.*, 315 A.3d 63 at **1 (non-precedential decision) (Pa. Super. filed February 8, 2024).

Appellant first argues the orphan's court abused its discretion in concluding that the hospital presented clear and convincing evidence of his incapacity when his testimony describing his post-hospitalization plans to care for himself undermined this evidence. He insists his testimony demonstrated an awareness of his circumstances and assets and articulated a plan to engage rehabilitative services after discharge that merited a trial court order in his favor. Brief of Appellant, at 23. He argues that his cognitive assessment

- 5 -

score of an 18 out of 30, while borderline between mild and moderate impairment, did not provide insight into his ability to care for himself outside of the hospital. Brief of Appellant at 24. The only reason the hospital staff considered him incapacitated and in need of guardianship services, he concludes, was because he openly disagreed with their assessment of his abilities. Brief of Appellant, at 25.

Sitting as finder of fact on this issue, the orphans' court deemed persuasive the testimony of Samantha Cerimele, M.D., board certified in psychiatry, and Lehigh Valley Hospital's Consultation Liaison Psychiatrist assigned to Appellant's case. N.T. at 4. Dr. Cerimele described her findings and diagnoses after conducting her first evaluation of Appellant on November 11, 2024. Psychological factors affecting a medical condition, she testified, included Appellant's "limited insight and poor adherence to treatment recommendations, mood disorder due to history of traumatic brain injury, [and] alcohol use disorder with specificity unknown[.]" She sought to "rule out neurocognitive disorder, which is dementia." N.T. at 6. This constellation of findings included a cognitive assessment test score "highly suggestive of cognitive impairment concerning for dementia" and physical therapy and occupational therapy staff recommendations that Appellant be discharged to "rehab" because of their concern about his ability to care for himself at home. N.T. at 6-7.

While Dr. Cerimele acknowledged Appellant was unimpaired in communicated decisions, long-term memory, and emergency situation

response, she found that his "short-term memory was totally impaired" and that he "did not even recall working with PT and OT nor their recommendations." N.T. at 8. She elaborated that he was "totally impaired" with receiving and evaluating information effectively, managing healthcare or providing for his own physical safety, and that his ability to give informed consent was impaired. N.T. at 8.

Dr. Cerimele also shared her impressions of Appellant after she was asked to re-evaluate him on November 27, 2024. He was oriented to person, hospital, city, month, year, and day of the week, and he was grossly oriented to situation, but she observed that his attention and his recall were impaired, "so his ability to remember information after a few minutes was significantly impaired. . . . [A]fter five minutes, he could not recall three words [that he had been asked to remember] and said, 'I don't know and it doesn't matter.'" N.T. at 10. Based on these evaluations Dr. Cerimele opined to a reasonable degree of medical certainty that Appellant presently lacked the ability to make medical, self-care, and financial decisions, and that his long-term prognosis likely will not improve and could potentially decline. N.T. at 11. Accordingly, she recommended that Appellant be admitted to a skilled nursing facility. N.T. at 10, 11.

The record also includes the testimony of Lyndsey Cameron, Lehigh Valley Hospital's Complex Case Manager, who opined that a safe discharge plan for Appellant did not include the option of returning him to his apartment, as he had not shown a capacity for making sound medical and financial

decisions. N.T. at 26. She expounded that "the concern is he is very dependent with bed mobility, with showering, ambulation. Even if we were to transport him home, [] he's not able to tolerate a wheelchair at this time because he doesn't show the strength to be able to sit up on his own[.]" N.T. at 26.

The orphans' court also considered Appellant's live testimony and found it supported Dr. Cerimele's findings that Appellant exhibited a concerning difficulty with recalling events. With citations to the evidentiary record, the orphans' court opines:

> In this matter, Appellant had difficulty recalling events. For example, Appellant did not know when he moved to his place of residence prior to hospitalization and his answer as to how he got to his place of residence was nonresponsive and incoherent. Appellant also had trouble remembering his income. Appellant also had a difficult time understanding counsel's questions and repeatedly responded by asking counsel to repeat himself.
>
> Appellant testified that he did not want to participate in physical therapy because he wanted to go home. However, Appellant explained that he did not know if he still had his apartment and stated that he was going to "try to get another room or see if my apartment is still open" or see if he could "get something else." Appellant further testified that his post-discharge plan was to go back to home, and then travel to Good Shephard for rehabilitation because the Good Shephard was near him and he could take the bus with his wheelchair.

TCO at 8.

This record supports the orphans' court's determination that Appellant is incapacitated who requires the assistance of a limited guardian of his person

and a plenary guardian of his estate. Accordingly, we discern no merit to Appellant's first challenge.

The remainder of Appellant's issues coalesce to assert a weight of the evidence claim in which he argues that "the trial court could have considered a less restrictive alternative placement in the home of the respondent." Brief of Appellant at 25. Appellant devotes one and one-half pages to the argument that 20 Pa.C.S.A. § 5512.1(a)(6) requires a court to consider options less restrictive than guardianship and, if no less restrictive alternatives are available and sufficient, limited guardianship. He contends that at the very least, a less restrictive alternative employing the Allentown Housing Authority, a public housing agency, was available and could have provided him with services and in-home care. Brief of Appellant at 26.

The orphans' court explains that it considered less restrictive alternatives and did not have the authority to direct the limited guardian of the person to return Appellant to his home, as 20 Pa.C.S.A. § §5512.1(b) and 5521, vest this guardian with decision-making authority on matters regarding a ward's general care, maintenance, and custody. In any event, the orphans' court concludes that even if it possessed authority to make this decision, it would have declined Appellant's request, as the evidence adduced at trial and discussed in the present decision clearly and convincingly demonstrated that Appellant's medical needs and physical condition made it unsafe for him to return to his pre-hospitalization home. Because our review of the record finds

support for the orphans' court's determination, Appellant's second issue affords him no relief.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2025